L.R. BRETZ, Plaintiff-Appellant,

v.

Zollie KELMAN, Jack R. Lande, Eugene R. Welborn, Defendants-Appellees.

No. 82–3111.

United States Court of Appeals,
Ninth Circuit.

Argued En Banc and Submitted
July 11, 1984.

Decided Oct. 8, 1985.

L.R. Bretz, Billings, Mont., Morton P. Cohen, San Francisco, Cal., for plaintiff-appellant.

Gregory H. Warner, Graybill, Ostrem, Warner & Crotty, Great Falls, Mont., for defendants-appellees.

Before BROWNING, Chief Judge, and GOODWIN, HUG, TANG, SKOPIL, SCHROEDER, FARRIS, ALARCON, FERGUSON, CANBY and REINHARDT, Circuit Judges.

GOODWIN, Circuit Judge

Appellant challenges the dismissal for failure to state a claim of his action alleging a conspiracy among police, prosecutors and personal enemies to accuse and prosecute him falsely for burglary. We reverse the judgment and remand for further proceedings.

Bretz alleges that the defendants, by means of false testimony, perjury and other prosecutorial misconduct denied him bail on unrelated charges and ultimately caused his imprisonment in a maximum security facility all in violation of his right to liberty under the Fourteenth Amendment.

On October 24, 1976, Lande, Welborn and a third person were arrested for the burglary of Kelman's residence in Great Falls, Montana. On January 26, 1977, Bretz, who had been incarcerated on an unrelated charge since December 1, 1976, was charged by an information with conspiracy in the Kelman burglary. Upon trial, Bretz was later acquitted for lack of credible evidence. Following his acquittal, Bretz' application for bail on the unrelated charges was denied, allegedly because of the recent prosecution on the unfounded burglary charge. Bretz alleges that the burglary charge was the result of a conspiracy among Lande, Welborn, Kelman, two Great Falls police officers and the City of Great Falls. He alleges that all five named defendants committed perjury, threatened and coerced witnesses, and concealed and falsified evidence.

After he was exonerated on the allegedly framed charges, Bretz filed pleadings, which, when liberally construed, allege a cause of action under 42 U.S.C. § 1983 and § 1985.[1] The district court, treating the papers as pleadings which attempted to federalize a routine state tort claim for malicious prosecution and slander, dismissed the claim. A divided panel of this court affirmed. *Bretz v. Kelman*, 722 F.2d 503 (9th Cir.1983), *withdrawn*, 729 F.2d 613 (9th Cir.1984). We took this case en banc along with two other § 1983 prisoner claims because of the importance and complexity of the questions and the doctrinal ambiguity which exists in this circuit over application of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).[2]

Even though the petitioner's brief does not specifically refer to § 1985, we must first determine whether Bretz has stated a cause of action under § 1985(2) or § 1985(3) for a conspiracy to deny him equal protection of the laws.[3] In *Griffin v.*

---

**1.** Although Bretz' appeal was drafted in terms of § 1983 only, we have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt. *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir.1984).

**2.** This case was heard along with *Haygood v. Younger*, 718 F.2d 1472 (9th Cir.1983), *withdrawn*, 729 F.2d 613 (9th Cir.1984); *decided en banc*, 769 F.2d 1350 (9th Cir.1985), and *Piatt v. MacDougall*, 723 F.2d Adv.Sh. 721 (9th Cir.), *withdrawn*, 729 F.2d 613 (9th Cir.1984).

**3.** Section 1985 contains discrete substantive clauses. Section 1985(1) concerns preventing an officer of the United States from performing his or her duties. The first clause of section 1985(2) concerns conspiracy to obstruct justice in the federal courts, or to intimidate a party, witness or juror in connection therewith. The second clause of § 1985(2) provides a cause of action if:

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws,

*Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), the Supreme Court held that the language of § 1985(3) requiring an intent to deprive the victim of equal protection or equal privileges and immunities must be limited to cases alleging some racial or class-based invidious discrimination. Otherwise, the court explained, § 1985 would become a generalized federal tort law to be invoked for any private tortious conspiracy. *Id.* at 101–02, 91 S.Ct. at 1797–98.

Recently the Supreme Court limited *Griffin* to the first clause of § 1985(3), holding that *Griffin* did not apply to conspiracies to intimidate witnesses in federal courts under the first clause of § 1985(2). *Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). The Court noted that, beyond applying to the first clause of § 1985(3), "[t]here is no suggestion [in *Griffin*] that its reasoning applies ... to the portions of the statute that prohibit interference with federal officers, federal courts, or federal elections." *Id.* at 726. The *Kush* court left undisturbed the *Griffin* holding that the first clause of § 1985(3) requires a showing of discriminatory animus, because the "underlying activity ... is not institutionally linked to federal interests and ... is usually of primary state concern." *Id* at 725. *See Mollnow v. Carlton,* 716 F.2d 627, 630 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984).

■ Because Bretz does not assert any federal interest or involvement with the alleged conspiracy, we must conclude that his § 1985 claims are based upon the second clause of § 1985(2) or the first clause of § 1985(3). Bretz does not, moreover, allege that he is a member of a class (*e.g.,*

state convicts) which suffers from invidious discrimination. Even construing his complaint liberally, we cannot find an allegation of racial or class-based discrimination. He cannot, therefore, state a cause of action under the first clause of § 1985(3). *Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798. The question remains, then, whether Bretz has stated a claim under the second clause of § 1985(2). We hold that he has not, because we conclude that an allegation of class-based animus is required for a claim under that clause as well.

It is true that in *Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 the Supreme Court held that no allegations of racial or class-based animus were required to state a claim under the *first* clause of § 1985(2), which proscribes conspiracies to interfere with the administration of justice in the federal courts. The reasoning of the Supreme Court in *Kush,* however, as well as that in *Griffin,* supports our conclusion that class-based animus is an essential part of a cause of action under the second clause of § 1985(2).

As the Court pointed out in *Kush,* 460 U.S. at 724, 103 S.Ct. at 1487, all parts of § 1985 were originally passed by Congress as a single statutory paragraph. Five types of conspiracy were proscribed: (1) conspiracies to interfere with the performance of federal duties by federal officers, now covered by § 1985(1); (2) conspiracies to interfere with justice in the federal courts, now covered by the first clause of § 1985(2); (3) conspiracies to interfere with justice in the state courts "with intent to deny any citizen" *"due and equal protection* of the laws," now covered by the second clause of § 1985(2) (emphasis added);[4] (4) private conspiracies to deny "any

---

or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

The first clause of § 1985(3) provides a cause of action for a private conspiracy to deny equal protection of the laws. The second clause of § 1985(3) provides a cause of action for a conspiracy:

for the purpose of preventing or hindering the constituted authorities of any State or Territo-

ry from giving or securing to all persons within such State or Territory the equal protection of the laws.

The third clause of § 1985(3) provides a cause of action for a conspiracy to interfere with federal elections.

**4.** When the original clause was codified into § 1985(2), the phrase "due and equal protection" was contracted to "equal protection." There was no intent to change the meaning.

person or class of persons ... the *equal protection* of the laws," now covered by the first clause of § 1985(3) (emphasis added); and (5) conspiracies to interfere with voting in federal elections, now covered by the second clause of § 1985(3). It bears emphasis that only two of these statutory provisions require an intent to deny the victim the equal protection of the laws, *see Kush*, 460 U.S. at 725, 103 S.Ct. at 1487, and they are the two provisions of § 1985 upon which Bretz must rely, if he may rely upon any.

In holding in *Griffin* that class-based animus was required for a claim under the first clause of § 1985(3), the Supreme Court stated:

> The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action....

*Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798 (emphasis original) (footnote omitted). While the Supreme Court was addressing the first clause of § 1985(3), its words apply equally well to the second clause of § 1985(2).

In *Kush* the Supreme Court elaborated upon its ruling in *Griffin*. The Court in *Kush* gave three reasons why class-based animus was *not* required for a claim under the *first* clause of § 1985(2), which pro-

scribes conspiracies to interfere with justice in the federal courts:

> First, the scope of the *Griffin* opinion [was] carefully confined to "the portion of § 1985(3) [then] before us...." Second, the analysis in the *Griffin* opinion relied heavily on the fact that the sponsors of the 1871 bill added the "equal protection" language in response to objections that the "enormous sweep of the original language" vastly extended federal authority and disrupted state control over private conduct.... That legislative background does not apply to portions of the statute that prohibit interference with federal officers, federal courts, or federal elections. Third, and of greatest importance, the statutory language that provides the textual basis for the "class-based, invidiously discriminatory animus" requirement simply does not appear in the portion of the statute that applies to this case.

460 U.S. at 726, 103 S.Ct. at 1488.

■ The reasoning of the Supreme Court in *Griffin* and *Kush* compels the conclusion that an allegation of class-based animus is an essential requirement of a claim under the second clause of § 1985(2).[5] The "equal protection" language appears in that clause, just as it does in the first clause of § 1985(3). It is consistent with the sponsors of the 1871 bill to limit the reach of the second clause of § 1985(2) because that clause deals with the state courts, rather than with matters traditionally within federal authority.[6] According-

---

*See Brawer v. Horowitz*, 535 F.2d 830, 838 n. 16 (3d Cir.1976). We conclude, however, that "due and equal protection" was not intended to refer to any broader rights than are encompassed in "equal protection." The entire second clause of § 1985(2) was added by the Senate Judiciary Committee to effectuate, in words more likely to be understood in the courts, the preceding language of the House Bill proscribing conspiracies to hinder state authorities in securing to all persons within the state the "equal protection of the laws." *Cong. Globe*, 42nd Cong., 1st Sess., 567 (1870) (remarks of Sen. Edmunds, Senate Manager of the Bill).

**5.** Indeed, this court so held in *Rutledge v. Arizona Board of Regents*, 660 F.2d 1345, 1355 (9th Cir.1981 (citing *Phillips v. Bridge Workers Local 118*, 556 F.2d 939, 940–41 (9th Cir.1977)). It

was our decision in *Rutledge* that the Supreme Court affirmed in *Kush*. Although the Supreme Court's decision dealt with a different issue, the Court noted our ruling on the second clause of § 1985(2) without indicating disapproval. *Kush*, 460 U.S. at 722–23, 103 S.Ct. at 1486.

**6.** The second clause of § 1985(2) originated in the Senate Judiciary Committee as an amendment to the House bill. In the course of comment on another section of the bill, a Senate Manager of the bill stated:

> We do not undertake in this bill to interfere with what might be called a private conspiracy growing out of a neighborhood feud of one man or a set of men against another to prevent one getting an indictment in the State courts against men for burning down his

ly, we read the "equal protection" language of the second clause of § 1985(2) to require an allegation of class-based animus for the statement of a claim under that clause.[7] Bretz has made no such allegation, and consequently has stated no such claim.

 In addition to alleging a cause of action under § 1985 for a conspiracy to deprive him of equal protection, Bretz also alleges a cause of action under § 1983 for denying him liberty in violation of his right to due process of law. He says he was denied bail in an unrelated criminal case as the direct result of being falsely accused on a burglary charge. Bretz has properly stated a claim under § 1983, if he claims that he was deprived of liberty: (1) under color of law and (2) without due process under the Fourteenth Amendment. The district court dismissed Bretz' § 1983 claim, citing *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), as dispositive.

In *Parratt v. Taylor*, the Supreme Court held that a cause of action could lie under § 1983 for negligent, random and unauthorized deprivations of property by state officials but only if the state had effectively denied the plaintiff a meaningful postdeprivation remedy in state courts. Later, the Court extended *Parratt* to situations involving intentional, but random and unauthorized deprivations of property by state officials. *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). As we have recently noted, "*Parratt* and *Hudson* dealt with relatively minor infractions of prisoners' interests in their personal property, and did not deal with official

assaults, batteries or other invasions of personal liberty." *Haygood v. Younger*, 769 F.2d 1350, 1356 (9th Cir.1985). The premise underlying both *Hudson* and *Parratt* is that, where the challenged deprivation is random and unauthorized, it is impracticable or impossible for the state to provide predeprivation process because the governmental machinery cannot foresee or predict random unauthorized actions. The state must be given at least one opportunity to redress a minor deprivation before a constitutional violation can have occurred; where the deprivation is both of a relatively insignificant interest and is utterly unpredictable, a postdeprivation remedy is the state's one opportunity to provide due process.

Since *Parratt*, the Supreme Court has refused to extend the doctrine to instances where a deprivation of property was the result of faulty state procedures, reasoning that such deprivations are foreseeable and it is not impracticable to provide predeprivation process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

To hold that *Parratt*, rather than *Logan*, controls the case at bar, therefore, we must find, at a minimum, that Bretz has alleged a deprivation of a constitutional right under color of law and that the deprivation was random and unauthorized. We can begin our analysis by assuming that the conspiracy which Bretz alleges, if proved, deprived him of liberty under color of law.

 An incorrect arrest does not provide grounds for a claim of deprivation of liberty without due process if the arrest

---

barn; but, if in a case like this, it should appear that this conspiracy was formed against this man because he was a Democrat, if you please, or because he was a Catholic, or because he was Metodist, or because he was a Vermonter, (which is a pretty painful instance that I have in my mind in the State of Florida within a few days where a man lost his life that that reason,) then this section could reach it.

*Cong. Globe,* 42nd Cong., 1st Sess., 567 (1871) (Senator Edmunds of Vermont).

7. In so ruling, we join the Fifth, First, Third and Seventh Circuits. *Kimble v. D.J. McDuffy, Inc.,* 623 F.2d 1060, 1065 (5th Cir.1980), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981); *Slavin v. Curry,* 574 F.2d 1256, 1262, *modified,* 583 F.2d 779 (5th Cir.1978); *Bradt v. Smith,* 634 F.2d 796, 801 (5th Cir.), *cert. denied,* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 106 (1981); *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir.1975); *Williams v. St. Joseph Hospital,* 629 F.2d 448, 451 (7th Cir.1980); *see Brawer v. Horowitz,* 535 F.2d 830, 837-40 (3d Cir.1976) *(dictum).*

was made pursuant to a valid warrant based upon probable cause. *Baker v. McCollan*, 443 U.S. 137, 143–45, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979). While innocence (or, as in the present case, acquittal after trial) may be relevant to a tort claim for false imprisonment, it is largely irrelevant to a claim of deprivation of liberty without due process of the law. *Id.* at 145, 99 S.Ct. at 2694–95. Nevertheless, if an arrest is made in bad faith, there may be a cause of action under § 1983 as an illegal, unconstitutional arrest. *See Guenther v. Holmgreen*, 738 F.2d 879, 883 (7th Cir.1984), *cert. denied,* ——— U.S. ———, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985). *See also Norton v. Liddel*, 620 F.2d 1375, 1378–79 (10th Cir.1980).

We have held that malicious prosecution generally does not constitute a deprivation of liberty without due process of law and is not a federal constitutional tort if process is available within the state judicial systems to remedy such wrongs. *Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir.1981). But, we have also held that an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights. *Id.* In *Cline,* we reversed the dismissal of Cline's complaint which had alleged facts in many important respects similar to those in the case at bar.

The similarity between the allegations here and those in *Cline* are too striking to ignore. In *Cline,* as here, there was an alleged conspiracy among Montana state officials and private citizens to convict the plaintiff on groundless charges and to deny him a fair trial. Both Cline and Bretz were eventually vindicated: Cline on appeal and Bretz at trial. If Bretz' allegations are eventually shown to be true, there was a conspiracy among government prosecutors, police officers and potential witnesses, all aimed at depriving Bretz of his liberty by distorting and corrupting the processes of the law.

Accepting Bretz' allegations as true, we have no trouble concluding that the complaint describes a taking of liberty by public officers and their civilian cohorts under color of law. Further development of the facts may confirm or refute this preliminary acceptance of the claim, but because this case is before us upon an appeal of a Fed.R.Civ.P. 12(b)(6) order, we must accept as true all the allegations of Bretz' complaint.

■ Given the proposition that Bretz may have been deprived of his liberty under color of law, we must next consider whether the case falls under the *Parratt* line of cases or the *Logan* line of cases. The *Parratt* analysis, in which the touchstone for predeprivation process is the feasibility of providing such process, is simply inapplicable where the alleged deprivation is inextricable from the alleged corruption of the process which the state ordinarily could provide. Bretz' allegations question whether the state court system could have been expected to provide him with due process—either before or after the alleged conspiracy to frame him.

*Parratt* is directed at minor infractions of prisoners interests, *see Haygood,* at 1356, when the alleged conduct is random and unauthorized, both in its inception and in its execution. By definition, a conspiracy, if one existed here, cannot be a random act, even if it was accomplished without the endorsement of the state governmental apparatus. A conspiracy to prosecute maliciously may, indeed, be unauthorized, but so is much of the state action which has historically led to liability under § 1983.

As in *Logan,* Bretz is challenging the direct abuse of the state process itself. It is meaningless to speak of the state's ability to provide postdeprivation remedial process where the state process itself has been abused. Consequently, also as in *Logan,* the state cannot satisfy the due process clause here by providing Bretz with a postdeprivation remedy in state court in the form of a tort action for malicious prosecution. Because a conspiracy under § 1985

is, by its very definition, not random behavior, we hold that *Parratt* cannot be applicable to a cause of action based on the allegations in this case relying upon both § 1985 and § 1983.

We accordingly reverse and remand to the district court with instructions to consider the Bretz complaint in light of *Logan* and *Cline* and to conduct such other proceedings as may become appropriate in view of further discovery.

Reversed and remanded.