799 F.2d 1396
 Russell M. JOHNSON, Dale A. Peterson, and Otto V. Sieber,
Plaintiffs-Appellants,
v.
George BARKER, William Closner, Grant Hansen, Robert Leick,
and Skamania County, Washington, Defendants-Appellees.
 No. 84-4175.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 6, 1986.
Decided Sept. 18, 1986.
 
 Michael D. Hunsinger, Neubauer, Mair, Abercrombie & Hunsinger, Seattle, Wash., for plaintiffs-appellants.
 F. Ross Burgess, Tacoma, Wash., H. Roland Hofstedt, Merrick, Hofstedt & Lindsey, Seattle, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 OPINION*
 Before WRIGHT, ANDERSON, and JOHN T. NOONAN, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 Russell Johnson, Dale Peterson and Otto Sieber (appellants) brought this civil rights action against Skamania County, Washington and four Skamania County officials pursuant to 42 U.S.C. Sec. 1983 (1976). The district court granted summary judgment in favor of Skamania County and its officials. We affirm.I. BACKGROUND
 
 
 2
 On May 18, 1980, a major volcanic eruption shook Mt. St. Helens in Washington. Appellants, led by Sieber, were members of a film crew making a film about the volcano. On May 23, 1980, appellants entered the Mt. St. Helens area and began hiking toward the top so as to complete their filmmaking endeavors. They hiked through the night and, at approximately 11:00 a.m. the next morning, May 24, appellants were spotted on the mountain by an Army helicopter pilot flying a search and rescue sortie. The helicopter landed and the pilot offered appellants a ride off the mountain. Appellants refused, stating that they intended to continue hiking to Spirit Lake. The pilot gave appellants a map and a compass, and then returned to report the incident to other search and rescue authorities.
 
 
 3
 After completing their filming the same day, appellants began hiking back down the mountain. At approximately 2:00 p.m., a helicopter carrying Skamania County Deputy Sheriff George Barker landed near appellants. Barker issued citations to appellants and refused appellants' request to fly them off the mountain. Appellants further allege that Barker, before taking off in his helicopter, forced appellants to change their route down the mountain. Appellants claim that as a result of the new route, which was the longer route they had used to go up the mountain the previous day, they were forced to spend another night on the mountain. During that night, Mt. St. Helens erupted again, raining ash and mud upon appellants. Unable to hike the rest of the way off the mountain, appellants eventually had to be rescued by helicopter.
 
 
 4
 The citations received by appellants were for violating an executive order that established restricted access zones around the mountain. Counsel for appellants notified Skamania County Deputy Prosecutor Grant Hansen that appellants were never within the restricted access zones and, therefore, had not violated the executive order. After looking into the matter further, Hansen confirmed that appellants were not within the forbidden zones as originally thought. Hansen informed appellants' counsel, however, that the Sheriff's office was pushing for a prosecution and that appellants might have illegally entered a broader restricted zone that was then in existence. Upon further study, Hansen determined that the broader zone had not been properly disclosed to the public, thus eliminating any possible prosecution on those grounds. Hansen dismissed the original charges and filed a new complaint on September 10, 1980, charging appellants with attempting to violate the executive order. No trial was held on these charges, however. On February 13, 1981, a Washington Superior Court granted a Writ of Prohibition filed by appellants on the ground that they had been denied their right to a speedy trial.
 
 
 5
 On June 1, 1983, appellants filed this civil rights action seeking damages for various torts allegedly committed under color of state law. Named in the suit as defendants were Barker, Hansen, Sheriff William Closner, Prosecutor Robert Leick, and Skamania County. Closner, Barker and Skamania County were charged with false arrest, false imprisonment and abuse of process. In addition, Closner was charged with malicious prosecution and defamation, while Skamania County was charged with defamation. Leick and Hansen were charged with malicious prosecution and abuse of process, and Leick was included in the defamation claim. On August 20, 1984, the district court granted summary judgment in favor of defendants on all counts except as to the false arrest claim against Barker. Appellants voluntarily dismissed that count and brought this appeal of the summary judgment.
 
 II. DISCUSSION
 
 6
 We review the grant of summary judgment de novo. Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983). Summary judgment is proper if, viewing the evidence in the light most favorable to appellants, no genuine issue of material fact remains for trial and defendants are entitled to prevail under the applicable substantive law. Demoran v. Witt, 781 F.2d 155, 156 (9th Cir.1986).
 
 
 7
 It is well settled that section 1983 "imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." Baker v. McCollan, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433, 443 (1979). The Due Process Clause does not, by its own force, extend individuals a right to be free of injury wherever a state is characterized as the tortfeasor. The Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405, 413 (1976). In order to achieve constitutional import, there must be a deprivation of a protected interest. Davidson v. Cannon, --- U.S. ----, ----, 106 S.Ct. 668, 670-71, 88 L.Ed.2d 677, 683 (1986). Consequently, although appellants speak primarily in terms of traditional tort law concepts, they essentially claim a deprivation of liberty without due process.[1] We will analyze each of appellants' claims on this basis.
 
 
 8
 A. Defamation.
 
 
 9
 Appellants claim that they were defamed by Closner and Leick in statements made to the press after the incident. If we assume the statements are defamatory, by virtue of viewing the facts in the light most favorable to appellants, the statements nevertheless fail to rise to the level of a constitutional tort. Paul v. Davis teaches that damage to reputation, standing alone, cannot state a claim for relief under section 1983 because reputation is neither "liberty" nor "property" guaranteed against state deprivation without due process of law. In order to attain protected status under the Due Process Clause, the state action complained of must also alter or extinguish a right or status previously recognized by state law. 424 U.S. at 711-12, 96 S.Ct. at 1165, 47 L.Ed.2d at 420.
 
 
 10
 Appellants have not alleged the loss of a "more tangible interest" as required by the Paul doctrine. The authority cited by appellants does not support their position, for in each instance the court applied Paul 's reputation-plus principle and found a separate federally recognizable liberty interest. See Vanelli v. Reynolds School District No. 7, 667 F.2d 773, 778 (9th Cir.1982) (finding loss of employment sufficient); Marrero v. City of Hialeah, 625 F.2d 499, 519 (5th Cir.1980), cert. denied, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981) (finding violation of Fourth Amendment rights sufficient). The summary judgment was proper as to this claim.
 
 
 11
 B. False Arrest.
 
 
 12
 Appellants also claim that they were falsely arrested when Barker landed his helicopter, approached appellants, issued citations, and departed. This claim is meritless. Issuing a citation under these circumstances is simply not tantamount to an arrest. It is true that "[w]hether an arrest has occurred 'depends on an evaluation of all the surrounding circumstances,' ... and not the subjective intent of the officers involved." United States v. Beck, 598 F.2d 497, 500 (9th Cir.1979) (citing United States v. Richards, 500 F.2d 1025, 1028 (9th Cir.1974), cert. denied, 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393 (1975), and Taylor v. State of Arizona, 471 F.2d 848, 851 (9th Cir.1972), cert. denied, 409 U.S. 1130, 93 S.Ct. 948, 35 L.Ed.2d 262 (1973)). Even if we assume, as appellants allege, that Barker was angry and vulgar when issuing the citation, these circumstances do not approach an "arrest" for purposes of this claim. Consequently, summary judgment was proper.
 
 
 13
 C. Malicious Prosecution and Abuse of Process.
 
 
 14
 Appellants claim abuse of process and malicious prosecution of constitutional proportions out of the following assumed facts. First, that the prosecutors hesitated to drop the initial charges, even after they were discovered to be baseless, because the sheriff wanted to prosecute appellants for "political" reasons. Second, that the prosecutors tried to make a case against appellants by arguing that they had entered a broader restricted zone, when in fact that zone had not been sufficiently publicized. Third, that after finally dismissing the first charges, the prosecutors filed a new complaint against appellants charging them with "attempting" to enter the known restricted areas. Fourth, that prosecutor Hansen misrepresented to appellants' counsel that the Army helicopter pilot would testify at trial, when in fact Hansen knew the witness would be unavailable. Finally, that the prosecutors sought and received a continuance based on that unavailability and subsequently failed to bring appellants to trial before the Writ of Prohibition was granted. It is undisputed that at no time were appellants incarcerated or physically abused by the state officials.
 
 
 15
 Most clearly, this scenario does not give rise to a valid denial of substantive due process claim. Admittedly, the standards that have been set out to identify substantive due process violations are somewhat hazy. See Rutherford v. City of Berkeley, 780 F.2d 1444, 1446 (9th Cir.1986). Nevertheless, we cannot say that the official conduct here "offend[s] those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." Id. (quoting Rochin v. California, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952)). The conduct was not "brutal," nor was it so egregious as to "shock the conscience." Id. This does not mean that we condone chicanery or abusive conduct on the part of government officials, nor does it mean that we find such abuses occurred here. We merely hold that the assumed conduct does not approach violating substantive due process concerns.
 
 
 16
 We also fail to find a violation of procedural due process. We have previously held that malicious prosecution does not ordinarily constitute a valid procedural due process claim if process is available within the state judicial system to remedy such wrongs. Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir.1985) (en banc); Cline v. Brusett, 661 F.2d 108, 112 (9th Cir.1981). An exception to this general rule has been recognized "when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." Bretz, 773 F.2d at 1031 (citing Cline, 661 F.2d at 112). Applying this exception in both Bretz and Cline, we held that an issue of unconstitutional taking of liberty was raised where the plaintiff alleged a conspiracy among state officials and private citizens to convict plaintiff on groundless charges and to deny plaintiff a fair trial. See, id. The conspiracies involved bribery of witnesses, perjured testimony and presentation of false evidence. Id. at 1027; 661 F.2d at 110. In addition, petitioners in both cases had been incarcerated. 773 F.2d at 1027; 661 F.2d at 110.
 
 
 17
 In the action before us, appellants' claims can be read to allege a conspiracy to bring them to trial on groundless, or at least questionable charges. Unlike the claims in Bretz and Cline, however, the record here does not show that appellants were unconstitutionally deprived of liberty or by the distortion and corruption of the processes of law. Nothing in the record indicates any corruption of witnesses or falsification of evidence. Indeed, there is no indication whatsoever that the defendants intended or attempted to deny appellants a fair trial. Rather, the record here, at the most, shows the prosecutor scrambling, under pressure from the sheriff, to find a crime with which appellants could be validly charged and prosecuted. The prosecutor's hesitance to drop all charges at the insistence of appellants' able counsel does not convert this into a failure of process. Nor does the sheriff's angry insistence that appellants be prosecuted for something after their excursion onto the mountain corrupt the process. Further, the prosecutor's curious actions with respect to the unavailable witness and the resultant continuance do not prove an underhanded attempt to deny appellants a fair trial. Consequently, we hold that the exception expounded in Bretz and Cline does not apply in these circumstances and summary judgment was proper as to these claims.
 
 
 18
 D. Negligence.
 
 
 19
 In their complaint, appellants stated a claim for negligent failure to rescue. (ER, Tab 1 at 3-4). Subsequently, in their brief to the district court in opposition to the motion for summary judgment, appellants for the first time entitled this claim as one for false imprisonment and listed the elements of false imprisonment. (ER, Tab 26 at 3-4). Under federal notice pleading, appellants are allowed to vary their theory to conform to proof presented. The problem here is that appellants have not presented any argument, either before this court or the district court, that remotely resembles an application of false imprisonment law to the facts of this case. The complaint speaks exclusively in negligence terms. The analysis in the brief before the district court, despite the heading of "false imprisonment," speaks entirely in negligence terms. Understandably, the defendants and the district court understood this to be a negligence claim. (ER, Tab 25 at 6, Tab 35). Likewise, before this court, appellants have entitled the claim as false imprisonment and listed the traditional elements, but they argue entirely in negligence terms. (Appellants' Opening Brief at 12, 14, 18-21). As a result, we must consider appellants' claim as one of negligence, as they have provided no basis upon which to vary the theory to false imprisonment.
 
 
 20
 The Supreme Court recently held, in Daniels v. Williams, --- U.S. ----, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." --- U.S. at ----, 106 S.Ct. at 663, 88 L.Ed.2d at 666 (emphasis in original). Appellants' claim of negligent failure to rescue cannot survive in the face of this authority. Summary judgment was proper on this claim.
 
 
 21
 Accordingly, we find that the summary judgment was proper as to all counts because appellants have failed to raise any valid constitutional issues. Because we so find, we need not address the various privilege and immunity defenses raised.
 
 The judgment of the district court is
 
 22
 AFFIRMED.
 
 
 
 *
 Prior to his untimely death on August 23, 1986, Judge Duniway concurred in the result as to each issue discussed in this opinion. Pursuant to court policy, Judge Noonan was randomly selected to replace Judge Duniway on the panel. The panel is of the view that reargument is unnecessary
 
 
 [1]
 Appellants claimed violations of both the Fifth and Fourteenth Amendment due process provisions. We will address this by looking only at the Fourteenth Amendment's Due Process Clause, which is applicable to the states. Appellants have not claimed that any other provisions of the Fifth Amendment which are recognized as applicable to the states (self-incrimination and double jeopardy) are implicated in this action