Patricia SANTOS, Plaintiff,

v.

COUNTY OF LOS ANGELES DEPARTMENT OF CHILDREN AND FAMILY SERVICES; Sokara Mitchell–Young, individually in her official capacity as social worker for the County of Los Angeles Department of Children and Family Services; and Lisa Wood, individually in her official capacity as social worker for the County of Los Angeles Department of Children and Family Services; and Billie Jo Conley, individually in her official capacity as social worker for the County of Los Angeles Department of Children and Family Services, and Does 1 through 10 inclusive, Defendants.

No. CV 02–6057–VAP(RC).

United States District Court, C.D. California.

Jan. 6, 2004.

See also 113 Cal.App.4th 132, 5 Cal. Rptr.3d 914.

Patricia Santos, pro se.

Anita S. Brenner, Torres & Brenner, Pasadena, CA, for defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

PHILLIPS, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Complaint and other papers along with the attached Report and Recommendation of the United States Magistrate Judge, and has made a *de novo* determination of the Report and Recommendation.

IT IS ORDERED that (1) this Report and Recommendation is approved and adopted; (2) Judgment shall be entered dismissing plaintiff's federal civil rights claims for failure to state a claim on which relief can be granted; (3) Judgment shall be entered granting the individually named defendants qualified immunity; and (4) Judgment shall be entered dismissing without prejudice plaintiff's state law claims.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recom-

mendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Virginia A. Phillips, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On August 2, 2002, plaintiff Patricia Santos, a non-prisoner proceeding pro se, filed a civil rights complaint against Los Angeles County Department of Children and Family Services ("County") and three County social workers, Sokara Mitchell–Young, Lisa Wood and Billie Jo Conley, in their individual and official capacities (collectively "defendant social workers"). On January 16, 2003, defendant social workers filed a motion to dismiss. On March 10, 2003, defendant County filed an answer, and on March 17, 2003, defendant County filed a motion to dismiss. While the motions to dismiss were pending, plaintiff lodged a proposed amended complaint, which this Court ordered the Clerk of Court to file. Defendants' motions to dismiss were then denied as moot.[1] On October 7, 2003, defendants filed a motion to dismiss the amended complaint and on October 10, 2003, defendants lodged certain Los Angeles County Superior Court docu-

---

1. The Court also denied as futile plaintiff's request to file a second amended complaint, adding as defendants the Los Angeles County Superior Court and its Clerk.

ments.[2] On October 22, 2003, plaintiff filed an opposition to defendants' motion to dismiss, a request for judicial notice, and the declaration of Patricia Santos. The defendants filed a reply on October 31, 2003.[3]

## II

■■■ The amended complaint raises ten counts or causes of action:[4] (1) violation of federal civil rights under 42 U.S.C. § 1983; (2) conspiracy to violate civil rights under 42 U.S.C. § 1985; (3) fraud, deceit, and misrepresentation; (4) violation of federal constitutional rights; (5) violation of state civil rights; (6) violation of Interstate Compact on Placement of Children ("ICPC"), Cal. Fam.Code §§ 7900, et seq.;[5] (7) violation of "Uniform Child Custody Jurisdictional Act";[6] (8) intentional infliction of emotional distress; (9) injunctive relief; and (10) declaratory relief. Common to all claims, plaintiff alleges that on January 25, 1994,[7] the San Bernardino County Department of Child and Family Services granted plaintiff custody of her minor nephew, Albert, and on September 18, 1994, the State of Hawaii granted plaintiff custody of Albert's two minor brothers, Alex and Anthony. Amended Complaint ("AC") ¶¶ 8, 13, Exh. A;[8] Lodgment at 676–81. On May 25, 1999, after reunification attempts with the minors' biological parents had long since failed, plaintiff began the process of adopting the minors. AC ¶¶ 10–14. On February 9, 2001, defendants Mitchell–Young and Wood informed plaintiff that if she

2. Plaintiff contends defendants' motion to dismiss should be denied because defendants have violated Local Rule 7–3. There is no merit to this claim because Local Rule 7–3 specifically exempts from its coverage cases to which Local Rule 16–11 does not apply, and Local Rule 16–11 does not apply to cases, such as this one, "in which the plaintiff is appearing *pro se* and is not an attorney."

3. On November 20, 2003, defendants untimely lodged additional documents from the California Court of Appeal; however, this Court has not considered those documents in issuing the Report and Recommendation.

4. Although these causes of action are separately titled and set forth in the amended complaint, several are overlapping or similar. For example, counts 1 and 4 raise similar legal claims and theories.

5. "The ICPC is an agreement among California and other states that governs 'sending, bringing or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to possible adoption....'" *In re Emmanuel R.*, 94 Cal. App.4th 452, 458, 114 Cal.Rptr.2d 320 (2001) (quoting Cal. Fam.Code § 7901, Art. 3(b)). "The purpose of the ICPC is to facilitate the cooperation between states in the placement and monitoring of dependent children." *Tara S. v. San Diego County Dep't of Soc. Serv.*, 13

Cal.App.4th 1834, 1837, 17 Cal.Rptr.2d 315 (1993); *In re Emmanuel R.*, 94 Cal.App.4th at 458, 114 Cal.Rptr.2d 320.

6. Presumably, plaintiff refers to the Uniform Child Custody Jurisdiction and Enforcement Act, Cal. Fam.Code §§ 3400, et seq.

7. Pursuant to Fed.R.Evid. 201, this Court takes judicial notice of the records in *In re Albert G.*, Los Angeles County Superior Court case no. CK 17963 ("Lodgment"), which defendants lodged on October 10, 2003.

8. The plaintiff has attached various documents as exhibits to her amended complaint. "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n. 1 (9th Cir.1991) (citations and internal punctuation omitted); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.), *cert. denied*, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987); *see also Cooper v. Pickett*, 137 F.3d 616, 622–23 (9th Cir.1997) (noting material properly submitted as part of complaint may be considered on motion to dismiss).

would agree to adopt Albert, they would arrange for her to receive expedited benefits to help offset the cost of day care for the minors, and plaintiff agreed to this offer. AC ¶¶ 15–18. On March 27, 2001, plaintiff filed a petition for the adoption of Albert, and the adoption was scheduled to take place on April 21, 2001; however, on April 17, 2001, defendant Mitchell–Young canceled the adoption "because she intended to change Albert's placement and status to long-term foster care." AC ¶¶ 16, 18–20, Exhs. E, I. On May 1, 2001, defendant Wood recommended to the Los Angeles County Superior Court that Albert be placed in long term foster care because plaintiff had not followed through with her plan to adopt him. Lodgment at 368–77.

In July 2001, defendants Mitchell–Young and Conley falsely offered plaintiff temporary "respite care" for the minors while plaintiff moved to a new house; however, defendants instead arranged for the minors' placement in foster care and restricted plaintiff to one weekly visit with the minors. AC ¶¶ 23–30. On July 20, 2001, plaintiff contacted defendant Mitchell–Young, who falsely assured plaintiff that long term foster care was the mechanism for providing "respite care" and the visitation restriction was in error and would be corrected. AC ¶ 32. However, on September 15, 2001, plaintiff was informed she was no longer the adoptive placement for Albert. AC ¶¶ 33–48. Plaintiff's many attempts to meet with defendants Mitchell–Young and Wood to discuss the situation were ignored. AC ¶ 48.

On November 30, 2001, the Los Angeles County Superior Court placed Albert with his paternal grandparents, Celia and Michael G., who became his guardians, and ordered plaintiff to stay at least 500 yards away from Albert and his grandparents. Lodgment at 12–18, 20–21, 53–55, 223–25. However, on April 19, 2002, plaintiff completed the adoption of Alex and Anthony in Hawaii. AC ¶ 124. On May 31, 2002, the Los Angeles County Superior Court again ordered plaintiff to stay at least 500 yards from Albert and his grandparents and ordered plaintiff to refrain from attempting to contact Albert. Lodgment at 9–11. Plaintiff made several requests to modify the court orders against her, but her requests were denied. Lodgment at 39, 42.

On July 31, 2002, Albert was adopted by his grandparents, and subsequently the Los Angeles County Superior Court terminated its jurisdiction. Lodgment at 39, 42. On October 9, 2002, plaintiff filed an appeal of Albert's removal from placement with her, Lodgment at 7–8; however, in a published opinion filed November 7, 2003, the California Court of Appeal dismissed plaintiff's appeal as moot. *In re Albert G.*, 113 Cal.App.4th 132, 5 Cal.Rptr.3d 914, 916–17 (2003).

Plaintiff seeks compensatory and punitive damages, declaratory relief "concerning the care and custody of said minor children, Alex, Anthony, and Albert[,]" and injunctive relief reinstating Albert to plaintiff's custody and allowing plaintiff to complete her adoption of Albert. AC at 33–34 and ¶¶ 121–34.

## DISCUSSION

### III

Rule 12(b)(1) provides for the dismissal of a claim for lack of subject matter jurisdiction. In her ninth and tenth causes of action, plaintiff seeks injunctive and declaratory relief to determine the custody of the minors. However, this Court lacks jurisdiction to adjudicate these claims because "the domestic relations exception ... divests the federal courts of power to issue ... child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992); *see*

*also Peterson v. Babbitt,* 708 F.2d 465, 466 (9th Cir.1983) (per curiam) ("[F]ederal courts have uniformly held that they should not adjudicate cases involving domestic relations, including 'the custody of minors and *a fortiori,* rights of visitation.' For that matter, the whole subject of domestic relations and particularly child custody problems is generally considered a state law matter." (citations omitted)). As the Ninth Circuit has explained:

> The strong state interest in domestic relations matters, the superior competence of state courts in settling family disputes because regulation and supervision of domestic relations is entrusted to the states, and the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state makes federal abstention in these cases appropriate.... There is no subject matter jurisdiction over ... domestic disputes [in which a federal court is asked to adjudicate child custody].

*Peterson,* 708 F.2d at 466; *Coats v. Woods,* 819 F.2d 236, 237 (9th Cir.1987). Therefore, plaintiff's ninth and tenth causes of action are dismissed for lack of subject matter jurisdiction.[9]

### IV

■ A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted when it is clear the plaintiff can prove no set of facts in support of the claim that would entitle her to relief. *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). In considering a motion to dismiss, the court must accept the allegations of the amended complaint as true. *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232; *Lee v. City of Los Angeles,* 250 F.3d 668, 677 (9th Cir.2001). Yet, the court need not accept as true matters judicially noted, and the "court may look beyond the plaintiff's complaint to matters of public record." *Shaw v. Hahn,* 56 F.3d 1128, 1129 n. 1 (9th Cir.), *cert. denied,* 516 U.S. 964, 116 S.Ct. 418, 133 L.Ed.2d 336 (1995); *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir.2000). The court also must construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969); *Resnick v. Hayes,* 213 F.3d 443, 447 (9th Cir.2000). Moreover, pro se pleadings are held to a less stringent standard than those drafted by a lawyer. *Haines v. Kerner,* 404 U.S. 519,

**9.** Furthermore, to the extent plaintiff is attacking the Los Angeles County Superior Court's custody decision regarding Albert, this Court is precluded from addressing that matter. If, following denial of her appeal by the California Court of Appeal, plaintiff has sought review in the California Supreme Court, this Court must abstain while that proceeding is ongoing. *Middlesex County Ethics Comm'n. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971); *Samuels v. Mackell,* 401 U.S. 66, 69, 91 S.Ct.

764, 766, 27 L.Ed.2d 688 (1971); *see also H.C. v. Koppel,* 203 F.3d 610, 613 (9th Cir. 2000) (Younger abstention appropriate when party seeks "wholesale federal intervention into an ongoing state [child custody] dispute"). On the other hand, if the Los Angeles County Superior Court's decision is now final, this Court lacks subject matter jurisdiction under the Rooker–Feldman doctrine. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 482, 486, 103 S.Ct. 1303, 1311, 1315, 1317, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923).

520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam); *Resnick*, 213 F.3d at 447.

## V

Generally, a municipal entity, such as defendant County, can be sued as a "person" under Section 1983.[10] *Monell v. Department of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir.1995). Although a municipal defendant is not subject to liability based on a theory of respondeat superior, *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992), a claim against a municipal defendant may be stated if the plaintiff alleges there is an unconstitutional policy or custom of that municipality that caused her injury. *Monell*, 436 U.S. at 691, 694, 98 S.Ct. at 2036–38. Moreover, a suit against public employees in their official capacities is equivalent to a claim against their municipal employer. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985);

*Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991).

Here, plaintiff has sued defendant social workers in both their individual and official capacities. Yet, plaintiff has not identified any municipal policy or custom that defendants allegedly followed in causing her injury; therefore, plaintiff's claims against defendant County and defendant social workers in their official capacities must be dismissed. *Ortez v. Washington County, State of Oregon*, 88 F.3d 804, 811 (9th Cir.1996); *Gibson v. United States*, 781 F.2d 1334, 1337–38 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987).

## VI

To state a Section 1983 claim against defendant social workers in their individual capacities, plaintiff must allege the deprivation of a constitutionally or federally protected right. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999); *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). Here, the gravamen of plaintiff's amended complaint [11] is that she was deprived of

---

**10.** Counts 3, 4, 6, 7, 9 and 10 of the amended complaint are directed against defendant County, as well as defendant social workers.

**11.** In her amended complaint, plaintiff claims defendants violated her "right to be free from unreasonable interference with prospective adoptive parent-child relationships," her "right to be free from unreasonable searches and seizures," and her "right to be free fro[m] arbitrary intrusions on plaintiff's physical and emotional well-being." AC at 15:9–19. However, plaintiff has not, and cannot, state a Section 1983 claim based on her status as a prospective adoptive parent. *Mullins v. State of Oregon*, 57 F.3d 789, 794 (9th Cir.1995); *see also Backlund v. Barnhart*, 778 F.2d 1386, 1389–90 (9th Cir.1985) (holding social workers who removed foster child from foster parents, who had taken preliminary steps to adopt child, violated no clearly established constitutional right). Likewise, plaintiff, who

does not claim defendants searched her or seized her property, cannot state a claim for the violation of her right to be free from unreasonable search and seizures. *See Mabe v. San Bernardino County Dept. of Public Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir.2001) (holding parent has no standing to claim violation of minor's Fourth Amendment rights). Finally, plaintiff's claim that defendant social workers arbitrarily deprived her of her physical and emotional well-being fails to allege a constitutional violation. *See Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.1992) (holding vague and conclusory allegations of civil rights violations are insufficient to state a claim under Section 1983); *Price v. Hawaii*, 939 F.2d 702, 708 (9th Cir.1991) (same), *cert. denied*, 503 U.S. 938, 112 S.Ct. 1479, 112 S.Ct. 1480, 117 L.Ed.2d 622 (1992).

due process of law when defendant social workers removed the minors from her care under false pretenses and placed them in alternate housing situations without a prior notice or hearing.[12]

■■■■■ Generally, "[s]tate actors, including social workers, who perform functions that are 'critical to the judicial process itself' are entitled to absolute immunity." *Doe v. Lebbos*, 348 F.3d 820, 825 (9th Cir.2003) (citations omitted); *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir.2003) (en banc). Specifically, "social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." *Meyers v. Contra Costa County Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir.), *cert. denied*, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987); *Miller*, 335 F.3d at 898. Here, defendant social workers are entitled to absolute immunity for their role in the initiation and pursuit of the adoption of Albert by his grandparents. *Miller*, 335 F.3d at 898; *Meyers*, 812 F.2d at 1157.

■■■■■ However, "beyond those functions historically recognized as absolutely immune at common law, qualified and only qualified immunity exists." *Miller*, 335 F.3d at 897; *Doe*, 348 F.3d at 825. Thus, the other actions by defendant social workers about which plaintiff complains, including the removal of the minors from plaintiff's custody, the making of false promises to plaintiff for temporary "respite care," and the placement of the minors in alternate housing situations, without returning the minors to plaintiff—even after she secured new housing—are not entitled to absolute immunity; rather, at most, such actions are subject only to the protection of qualified immunity. *See Miller*, 335 F.3d at 898 ("Examples of ... functions [for which qualified, rather than absolute, immunity is available] may include decisions and recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care."); *Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir.1991) (social workers are not entitled to absolute immunity for actions removing minors from parent without warrant and transporting minors out of state).

■■■■■ Government officials performing discretionary functions generally are entitled to qualified immunity if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999); *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam). "Through the application of the qualified immunity doctrine, public servants avoid 'the general costs of subjecting officials to the risks of trial-distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" *V–1 Oil Co. v. Smith*, 114 F.3d 854, 857 (9th Cir.1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982)).

■■■■■ A qualified immunity analysis must begin with the "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [government official's] conduct violated a constitutional right."

---

**12.** With regard to Albert, plaintiff attended numerous post-removal hearings regarding the placement and adoption of Albert. *See, generally*, Lodgment at 8–377. With regard to Alex and Anthony, plaintiff received post-removal due process, as she ultimately successfully adopted the two boys. AC, ¶ 124; Lodgment at 191–92, 1022–23.

*Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); *Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir.2001) (en banc). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier,* 533 U.S. at 201, 121 S.Ct. at 2156; *Devereaux,* 263 F.3d at 1074. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [government official] that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. at 2156; *Meredith v. Erath,* 342 F.3d 1057, 1060–61 (9th Cir.2003).

■■■ "The constitutional rights of **parents** and children to live together without governmental interference is well established." *Mabe,* 237 F.3d at 1107 ((emphasis added)); *Doe,* 348 F.3d at 827; *see also Troxel v. Granville,* 530 U.S. 57, 64, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) ("The liberty interest at issue in this case—the interest of **parents** in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." (emphasis added)). Indeed, "[t]he Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Mabe,* 237 F.3d at 1107; *see also Wallis v. Spencer,* 202 F.3d 1126, 1138 (9th Cir.2000) ("Officials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that injury."); *Ram v. Rubin,* 118 F.3d 1306, 1310 (9th Cir.1997) ("In 1993, it was clear that a parent had a constitutionally protected right to the care and custody of his children and that he could not be summarily deprived of that custody without notice and a hearing, except when the children were in imminent danger."), *cert. denied,* 522 U.S. 1045, 118 S.Ct. 686, 139 L.Ed.2d 633 (1998). However, at the time the minors were removed from plaintiff's care, she was neither their natural nor adoptive parent. Nevertheless, for purposes of this opinion, the Court will assume plaintiff, a biologically-related non-parent with a long-standing familial relationship with the minors,[13] has a constitutional right to be free from interference with her custodial relationship with minors who were placed in her care. *See, e.g., Smith v. Organization of Foster Families for Equality and Reform,* 431 U.S. 816, 849 n. 49, 97 S.Ct. 2094, 2109 n. 49, 53 L.Ed.2d 14 (1977) (the right to "custody, care, and nurture" of a child sometimes "extends beyond natural parents"); *Rivera v. Marcus,* 696 F.2d 1016, 1024–25 (2d Cir.1982) (holding "custodial relatives ... are entitled to due process protections when the state decides to remove a dependent relative from the family environment").

■■■ Thus, the key question is whether plaintiff's liberty interest was "clearly established" at the time of the events alleged in plaintiff's amended complaint. It was not. To the contrary, "a reasonable" social worker would not have understood that removing the minors from placement with plaintiff before she was afforded notice or

---

13. In Mullins, the Ninth Circuit held a biological relationship between a non-parent desiring to become an adoptive parent and a minor is, by itself, insufficient to warrant constitutional protection, *Mullins,* 57 F.3d at 794; *but see id.* at 793–94 ("[T]his is not a case about breaking up an extant family unit. Simply put, there never has been any familial relationship between the Mullinses and their grandchildren.").

a hearing on their removal was in any manner violating plaintiff's constitutionally protected rights. *Saucier,* 533 U.S. at 202, 121 S.Ct. at 2156; *see also Cruz v. Kauai County,* 279 F.3d 1064, 1069 (9th Cir.) ("The right must be established at more than an abstract level[.]"), *cert. denied,* 537 U.S. 1053, 123 S.Ct. 608, 154 L.Ed.2d 531 (2002).

 Here, the parties have not cited, and this Court has not found, any binding Supreme Court or Ninth Circuit precedent showing plaintiff has a "clearly established" right to a notice or hearing before the minors were removed from her care. "Absent binding precedent, [this Court] look[s] to all available decisional law, including the law of other circuits and district courts, to determine whether the right was clearly established." *Lum v. Jensen,* 876 F.2d 1385, 1387 (9th Cir.1989), *cert. denied,* 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990); *Tribble v. Gardner,* 860 F.2d 321, 324 (9th Cir.1988), *cert. denied,* 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). This Court "also evaluate[s] the likelihood that this circuit or the Supreme Court would have reached the same result as courts that have already considered the issue." *Lum,* 876 F.2d at 1387; *Tribble,* 860 F.2d at 324.

Most courts, as discussed above, have found that a biologically-related non-parent does not have a protected liberty interest that must be addressed **before** a minor is removed from that person's care. *See,* e.g., *Gordon v. Lowell,* 95 F.Supp.2d 264, 269 (E.D.Pa.2000) (grandparents have no liberty interest regarding removal of grandchild who had lived with grandparents for 16 months); *Thomas v. State of Illinois,* 2002 WL 1632373, *2 (N.D.Ill.) (stating it "is not clear what rights and due process are afforded a foster parent who is a biological relative of the foster children" for whom she had been caring; therefore,

defendants are entitled to qualified immunity). In fact, only one court has held that a biologically-related non-parent has a protected liberty interest when the state decides to remove the minor from the family environment, *Rivera,* 696 F.2d at 1024–25, while a second appellate court has assumed this is so. *See Ellis v. Hamilton,* 669 F.2d 510, 514 (7th Cir.) (assuming great-aunt has liberty interest in retaining custody of children who had lived with her for "long stretches of time"), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). Thus, this Court finds plaintiff does not have a clearly established liberty interest, and defendant social workers are entitled to qualified immunity on plaintiff's Section 1983 claims.

**VII**

 Plaintiff also claims defendant social workers violated 42 U.S.C. § 1985, which proscribes certain types of conspiracies to interfere with civil rights. *Sanchez v. City of Santa Ana,* 936 F.2d 1027, 1039 (9th Cir.), *cert. denied,* 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991); *Karim–Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 626 (9th Cir.1988). "Because [plaintiff] does not assert any federal interest or involvement with the alleged conspiracy, [this Court] must conclude that [her] § 1985 claims are based upon the second clause of § 1985(2) or the first clause of § 1985(3)." *Bretz v. Kelman,* 773 F.2d 1026, 1028 (9th Cir.1985) (en banc). The second clause of Section 1985(2) creates a federal cause of action arising from conspiracies which obstruct the due course of justice in any state or territory with intent to deny equal protection. *Bagley,* 923 F.2d at 763. This requires an allegation of race or class-based animus. *Portman v. County of Santa Clara,* 995 F.2d 898, 909 (9th Cir.1993); *Bretz,* 773 F.2d at 1029–30. Here, plaintiff has not alleged

that defendants' conduct "denied [her] access to state courts because [she] was a member of a protected class. Thus, [plaintiff] has no cause of action for denial of access to state court." *Portman,* 995 F.2d at 909.

 Likewise, plaintiff cannot state a cause of action under the first clause of section 1985(3) because this section also requires "an allegation of racial or class-based discrimination." *Bretz,* 773 F.2d at 1028; *see also Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267–68, 113 S.Ct. 753, 758, 122 L.Ed.2d 34 (1993) (holding that to avoid interpreting Section 1985(3) as general federal tort law, Supreme Court has emphasized plaintiff must prove as element of cause of action "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971))). Therefore, plaintiff's Section 1985 cause of action must be dismissed.

### VIII

Having dismissed plaintiffs' federal claims, this Court declines to retain jurisdiction over plaintiff's supplemental state claims because no federal cause of action remains. 28 U.S.C. § 1367(c); *Brown v. Lucky Stores, Inc.,* 246 F.3d 1182, 1189 (9th Cir.2001); *Voigt v. Savell,* 70 F.3d 1552, 1565 (9th Cir.1995), *cert. denied,* 517 U.S. 1209, 116 S.Ct. 1826, 134 L.Ed.2d 931 (1996).

### RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) entering Judgment dismissing plaintiff's federal civil rights claims for failure to state a claim on which relief can be granted; (3) enter-

ing Judgment granting the individually named defendants qualified immunity; and (4) entering Judgment dismissing without prejudice plaintiff's state law claims.