**CHRISTIAN GOSPEL CHURCH, INC.,**
**Plaintiff–Appellant,**

v.

**CITY AND COUNTY OF SAN FRANCISCO, et al., Defendants–Appellees.**

**No. 88–15490.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1989.

Decided Feb. 27, 1990.

---

Richard A. Canatella and Albert E. Levy, San Francisco, Cal., for plaintiff-appellant, Christian Gospel Church.

Melba Yee, Deputy City Atty., San Francisco, Cal., for City and County of San Francisco, defendant-appellee.

Zach Cowan, San Francisco, Cal., for Greater West Portal Neighborhood Ass'n and Howard Strassner, defendants-appellees.

Before POOLE, NELSON and WIGGINS, Circuit Judges.

NELSON, Circuit Judge:

The Christian Gospel Church appeals from a grant of summary judgment by the district court in favor of appellees, the City and County of San Francisco, the Greater West Portal Neighborhood Association and Howard Strassner, finding no civil rights violations. Appellant contends that the denial of a zoning permit which would have enabled the Church to hold worship services in a residential neighborhood was a violation of the free exercise clause of the first amendment and of the equal protection clause of the fourteenth amendment. In addition, appellant claims that appellees conspired to violate the civil rights of the Church. We affirm the district court's grant of summary judgment.

## FACTS

In May, 1987, the Christian Gospel Church (hereinafter "Church") applied for conditional use authorization to establish a church in a single-family residence at 357 Vicente Street, San Francisco, in an area

zoned for single-family residences. The Church had previously held its worship services in a rented banquet room at a hotel. The Church proposed to use the dwelling at 357 Vicente Street for Sunday morning worship services as well as Bible study and prayer meetings on Wednesday and Sunday evenings. The Church estimated that the congregation would include 50 people maximum.

The San Francisco City Code at § 209.3(j) prohibits churches in residential districts unless a conditional use permit is granted. The criteria for evaluating an application for such a permit, as set forth in Planning Code § 303(c), includes determining that: (1) the proposed use must be necessary or desirable for, and compatible with, the neighborhood or the community; (2) the use will not be detrimental to the health, safety, convenience or general welfare of persons residing in the vicinity; (3) the use must comply with the applicable provisions of the code and will not adversely affect the City's Master Plan.

A neighborhood organization, the Greater West Portal Neighborhood Association (hereinafter "Neighborhood Association") opposed the granting of a conditional use permit to the Church and circulated a petition in the neighborhood of 357 Vicente calling for a denial of the permit.[1] The petition was signed by 190 residents.

On October 22, 1987 the San Francisco City Planning Commission denied appellant's application for a conditional use permit. Specifically, the Commission concluded that the Church could create noise, traffic and parking problems and that it would adversely affect the character of the neighborhood.

The Church filed this action in district court against the City and County of San Francisco, Robert Passner (the city's zoning administrator), six members of the Department of City Planning, the Neighborhood Association, and Howard Strassner (member of the Neighborhood Association). The City defendants and the Neighborhood Association defendants moved separately for summary judgment. The district court granted summary judgment in favor of defendants. The Church filed a timely notice of appeal.

## ANALYSIS

*Standard of Review.* We review *de novo* a district court grant of summary judgment. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 761 F.2d 553, 555 (9th Cir.1985).

I. The Zoning Provision and Free Exercise of Religion

 The Church claims that the district court erred in concluding that the San Francisco Planning Code § 209.3(j) requirement that a conditional use permit for the establishment of a church in a residential neighborhood does not violate the free exercise clause of the first amendment. The question of whether a zoning provision violates the free exercise clause is one of first impression for this circuit.[2] We have artic-

---

1. The petition stated:
 Our opposition is based on the following: (1) There are too many churches in our residential neighborhood. (2) There are vacancies on Taraval Street and West Portal Avenue, both commercial areas, that would be better suited for this church. (3) This proposed use does not maintain neighborhood characteristics as required by proposition "M". (4) There is a housing shortage in our residential neighborhood. To convert a single family dwelling into a church would further reduce the number of single family dwellings available in our neighborhood. (5) Allowing this use as a church, even on a part-time basis, would create additional traffic that is dangerous to us and our families. There is insufficient parking available in the immediate area.

 (6) The noise created by this church would interfere with the quiet enjoyment of our homes.

2. Other circuits have addressed this issue. In *Islamic Center of Miss., Inc. v. City of Starkville, Miss.*, 840 F.2d 293 (5th Cir.1988), the Fifth Circuit held that a provision requiring a permit for the establishment of a place of worship anywhere in the town of Starkville was unconstitutional when such a permit had never been granted to a Muslim congregation. The Sixth Circuit in *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio*, 699 F.2d 303 (6th Cir.), *cert. denied*, 464 U.S. 815, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983), upheld a zoning provision which prohibited the construction of a church on a specific lot. In *Messiah*

ulated a general standard for evaluating the impact of a government provision on the exercise of religion and we find that this test is appropriate for analyzing a challenge to zoning laws. This test involves examining the following three factors:

(1) the magnitude of the statute's impact upon the exercise of the religious belief;

(2) the existence of a compelling state interest justifying the imposed burden upon the exercise of the religious belief; and

(3) the extent to which recognition of an exemption from the statute would impede the objectives sought to be advanced by the state.

*Callahan v. Woods,* 736 F.2d 1269, 1273 (9th Cir.1984); *EEOC v. Fremont Christian School,* 781 F.2d 1362, 1367 (9th Cir. 1986).

*The impact on religion.* The Church listed three reasons why it was burdened by the denial of a conditional use permit. All three of these reasons center around the importance of "home worship". First, the Church emphasized the importance of home worship in protecting minority religions from persecution. Second, the Church's expert witness stated that "[t]he fundamental belief in house church is that Jesus is soon coming again and nonresidential structures for worship are unnecessary and contrary to the belief." Third, appellant argued that churches have a strong interest in a quiet environment and "have a valid interest in being insulated from certain kinds of commercial establishments." *Larkin v. Grendel's Den, Inc.,* 459 U.S. 116, 121, 103 S.Ct. 505, 509, 74 L.Ed.2d 297 (1982).

It is uncontroverted that the Church had, until applying for this permit, worshiped in the banquet room of a hotel. It is difficult for us to find a significant burden on religious practice if the Church had not previously been practicing home worship. The burden on religious practice is not great

when the government action, in this case the denial of a use permit, does not restrict current religious practice but rather prevents a change in religious practice.

Most significantly, the Church has made no showing of why it is important for the Church to worship in this particular home. The government action in this case did not prevent all home worship. Rather, it involved the denial of a permit to worship in this specific home. The burdens imposed by this action are therefore of convenience and expense, requiring appellant to find another home or another forum for worship. We find that the burden on religious practice in this zoning scheme is minimal.

*Government interest.* A zoning system "protects the zones' inhabitants from problems of traffic, noise and litter, avoids spot zoning, and preserves a coherent land use zoning plan." *Grosz,* 721 F.2d at 738. These concerns are particularly strong in this case since the Church is applying for nonresidential use in a residential neighborhood. San Francisco has a strong interest in the maintenance of the integrity of its zoning scheme and the protection of its residential neighborhoods. *See City of Memphis v. Greene,* 451 U.S. 100, 127, 101 S.Ct. 1584, 1600, 67 L.Ed.2d 769 (1981); *Village of Belle Terre v. Boraas,* 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974).

In addition, the city has an interest in protecting the interests of the residents in the neighborhood of 357 Vicente Street. As those neighbors asserted in their petition, the use of that dwelling for worship services would bring traffic and noise problems to an otherwise quiet residential neighborhood.

*Balancing the interests.* The third prong of the free exercise test involves analyzing the extent to which recognition of an exemption from the government action would impede the objectives sought by

*Baptist Church v. County of Jefferson, State of Colo.,* 859 F.2d 820 (10th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989), the Tenth Circuit upheld a zoning provision which precluded construction of a church in an agricultural zone. Finally, in *Grosz v. City*

*of Miami Beach, Fla.,* 721 F.2d 729 (11th Cir. 1983), *cert. denied,* 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 524 (1984), the court upheld the prosecution of a rabbi who conducted worship services in his home in violation of zoning laws.

the state. We have found that the burden on religious practice in this case is minimal. The government's interests in not allowing an exception to the zoning provision are, in contrast, strong.[3] We find that the burden on religious practice in this case does not warrant an exemption from the zoning scheme and affirm the finding of the district court that the zoning scheme requiring the grant of a conditional use permit for worship services to be held in this residential neighborhood does not violate the free exercise clause of the first amendment.

## II. Equal Protection

■ *Standard of equal protection review.* The Church contends that the zoning provision under which it is required to obtain a conditional use permit discriminates against churches and against this particular church. Appellant argues that within 4 years of the filing of this lawsuit, 30 conditional use permits were granted and only 4 were denied, and therefore that the denial was unusual. In addition, appellant argues that since permits are not required for senior citizen dwellings, residential care facilities, and open space and recreational facilities, permit requirements for churches violate equal protection. All assembly-type activities, such as schools, churches and community centers, in this particular zone require conditional use permits.

Since the zoning scheme does not implicate a suspect class or a fundamental right, the appropriate question for this equal protection analysis is whether or not the provision is rationally related to a permissible state objective. *Rinaldi v. Yeager,* 384 U.S. 305, 308–309, 86 S.Ct. 1497, 1499–1500, 16 L.Ed.2d 577 (1966).

*Discrimination against this particular church.* The Church contends that it was discriminated against because few church applications for conditional use permits were actually denied by the City Planning Commission. The Church argues that the

true reason for permit denial was neighborhood opposition. In response, the City of San Francisco points out that although 25 of the 30 applications for church permits were granted in the 4 years prior to this action, only 3 of those 25 permits were granted in residential neighborhoods. Thus, although church permits are frequently granted, they are not frequently granted in neighborhoods like the one surrounding 357 Vicente Street.

Contrary to the arguments of the Church, neighborhood opposition to the granting of a conditional use permit is not unlawful and should be considered by the Planning Commission. One of the factors listed in the Planning Code for the Planning Commission to consider in evaluating permit applications is "[t]hat such use ... will not be detrimental to the health, safety, convenience or general welfare of persons residing or working in the vicinity." San Francisco Planning Code § 303(c)(2). The views of the residents of the area surrounding the property are important for the Commission to consider in evaluating the impact of a permit on the neighborhood.

The City and County of San Francisco have a legitimate interest in preserving the welfare and character of its neighborhoods. Consideration of neighborhood opinion in pursuing this interest is lawful. We find that the denial of the permit was rationally related to this important government objective. Thus, appellant's equal protection rights were not violated by the denial of a permit to this particular church.

■ *Discrimination against churches.* Appellant also claims that the provision requiring use permits for churches (and other forms of public assembly) but not other nonresidential uses, such as parks and child care facilities, violates equal protection. In order to prevail, the Church must make a showing that a class that is similarly situated has been treated disparately. *See Palmer v. Thompson,* 403 U.S. 217, 225, 91 S.Ct. 1940, 1945, 29 L.Ed.2d

---

**3.** These interests include protecting the integrity of the zoning scheme and protecting the interests of the neighborhood of 357 Vicente Street.

438 (1971) (no violation of equal protection when state action affected blacks no differently than whites); *Shahla v. Immigration and Naturalization Service,* 749 F.2d 561, 563 (9th Cir.1984) (no equal protection violation when appellant failed to produce evidence that INS distinguished between classes of Iranian immigrants). "[A]ny equal protection argument requires the existence of at least two classifications of persons which are treated differently under the law." *United States v. Horton,* 601 F.2d 319, 323–324 (7th Cir.), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979). The Church was treated no differently than a school or community center would have been. We do not see any reason why churches alone should be treated differently than other types of assembly.

We find that there is a rational basis for a law requiring all places of public assembly to obtain a conditional use permit before establishment in certain neighborhoods. These activities bring undesired noise and traffic problems to a neighborhood. There is no equal protection violation in such a zoning requirement.

III. Conspiracy to Violate Constitutional Rights

■ The Church claims that the appellees in this action conspired to deprive it of its first amendment right to the free exercise of religion. The district court found that:

> plaintiff's conspiracy claim is without merit and factual basis. Defendants Greater West Portal Neighborhood Association and Howard Strassner have certain constitutional rights under the First Amendment to oppose a zoning permit application pending before the San Francisco Planning Commission. The exercise of that right does not constitute a conspiracy between the defendants.

*Christian Gospel Church, Inc. v. City and County of San Francisco,* No. C88–1219 RHS (N.D. Cal., Oct. 17, 1988). We affirm the decision of the district court.

The Church claims that the private appellees conspired to violate the Church's civil rights by circulating a petition, testifying before the Planning Commission and writing letters to the editor. We heard a similar claim in *Evers v. County of Custer,* 745 F.2d 1196 (9th Cir.1984), in which a landowner sued his private neighbors for violation of due process when the neighbors petitioned the government to declare that the road in front of the landowner's house was a public road and could not be fenced off. We held that the action of the neighbors "falls within the first amendment's protection of the right to petition the government for redress of grievances." *Id.* at 1204. Similarly the Neighborhood Association in this case was fully protected by the first amendment when it campaigned against the granting of the permit.

The Church contends that the actions of the Neighborhood Association are not entitled to first amendment protection because they were defamatory. However, this is a lawsuit alleging violations of civil rights, not the tort of defamation. It is incongruous for the Church to claim that because it was defamed, its free exercise rights were therefore violated.

Since the private appellees did not violate the civil rights of the Church, there can be no cause of action against the government for conspiring with the private appellees to violate the civil rights of the Church. *Pacific Tel. and Tel. Co. v. MCI Communications Corp.,* 649 F.2d 1315, 1319 (9th Cir. 1981) (no action for civil conspiracy if there is no independent wrongful act). *See also Landrigan v. City of Warwick,* 628 F.2d 736, 742 (1st Cir.1980) (in order to prevail on a claim of conspiracy to violate civil rights, there must be a showing of an actual deprivation of those rights). Likewise, the private appellees cannot be held to have conspired with the government to violate the civil rights of the Church when their actions were protected by the first amendment and when the government did not violate the appellant's civil rights.

The neighbors of 357 Vicente Street were doing what citizens should be encouraged to do, taking an active role in the decisions of government. Their involvement was certainly not actionable. We find that

there was no conspiracy to deprive the Church of its civil rights.

## IV. Sanctions and Attorneys' Fees

We deny the request of appellees for attorneys' fees and sanctions against appellants.

AFFIRMED.