Robert S. **FLOWERS**, M.D., Plaintiff,

v.

Sherrie T. **SEKI**, Cynthia S. Nakamura, Irene M. Nakano, Owen K. Tamamoto, individually and in their official capacities as attorneys for the Regulated Industries Complaint Office, Department of Consumer Affairs, State of Hawaii; Earl Harada, individually and in his official capacities as investigator for the Regulated Industries Complaint Office, Department of Consumer Affairs, State of Hawaii; Kathryn S. Matayoshi, in her official capacity as Director of the Department of Commerce and Consumer Affairs, State of Hawaii; and Sharon On Leng, in her official capacity as Complaints and Enforcement Officer of the Regulated Industries Complaints Office, Department of Consumer Affairs, State of Hawaii; and John Does 1–20, Defendants.

No. CV. 94–00190DAE.

United States District Court,
D. Hawaii.

Feb. 13, 1998.

---

David L. Turk, Honolulu, HI, for Robert S. Flowers, M.D., plaintiff.

David A. Webber, James C. Paige, Office of the Attorney General—State of Hawaii, Honolulu, HI, Kenneth S. Robbins, Honolulu, HI, Shinken Naitoh, Robbins & Rhodes, Honolulu, HI, for Sherrie T. Seki, Cynthia S. Nakamura, defendants.

Kenneth S. Robbins, Shinken Naitoh, Honolulu, HI, for Owen K. Tamamoto, Sharon On Leng, Irene M. Nakano, Earl Harada, Kathryn S. Matayoshi, defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

The court heard Defendants' Motion on January 5, 1998. David L. Turk, Esq., appeared at the hearing on behalf of Plaintiff; Kenneth S. Robbins, Esq., and Deputy Attorney General David A. Webber, appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendants' Motion to Dismiss for failure to state a claim.

### BACKGROUND

This case has a tortured and extended history. Because the instant motion is dispositive, and this court has issued previous orders cited by the parties, and relevant hereto, a discussion in some detail of the background of the case is necessary.

This case arises from a Hawaii state license revocation proceeding charging Plaintiff, a plastic surgeon, with gross negligence and manifest incapacity under Hawaii Revised Statutes Chapter 453. Defendants are officials and employees of the State of Hawaii who investigate and prosecute complaints against those with licenses issued by the State of Hawaii. Specifically, Defendants are employees in some capacity of the Department of Commerce and Consumer Affairs ("DCCA"). The controversy in the instant proceeding is based upon an investigation and petition filed by the attorneys at the Regulated Industries Complaints Office ("RICO"), a division of DCCA. Each of the Defendants is alleged to be in some manner involved in the proceedings pending against Plaintiff.

Defendants Seki, Nakano and Tamamoto are staff attorneys employed by RICO. Defendant Nakamura is a supervising attorney employed by RICO, and Defendant On Leng is the Complaints and Enforcement Officer, and heads RICO. Defendant Harada is an investigator employed by DCCA, working in the RICO division. And finally, Defendant Matayoshi heads DCCA, and as Director she presides over RICO. While the Board of Medical Examiners is the State agency that adjudicates the complaints over physicians within the State of Hawaii, the investigative as well as charging authority for the complaints is delegated to RICO.

The first RICO investigation into Plaintiff's professional activities was the result of earlier charges lodged against Plaintiff. After some discussion, Plaintiff and RICO entered into a Settlement Agreement in 1988. The Settlement Agreement restricted Plaintiff's practice and required RICO monitoring and individualized reporting. After the 1988 Settlement, more complaints were filed against Plaintiff, and a new investigation was commenced in February 1991. On December 17, 1993, Defendant Seki filed a petition in the Office of Administrative Hearings, so that a hearing could be conducted on the new complaints. On March 9, 1994, Plaintiff filed the above-entitled action, requesting declaratory and injunctive relief, as well as damages. Plaintiff also alleges that Defendants violated his civil rights under 42 U.S.C. § 1983 because the petition was investigated and filed in bad faith without a reasonable expectation of success. Plaintiff contends that Defendants conspired to violate his constitutional rights, and that the supervising Defendants were deliberately indifferent to such violations. Plaintiff asserts state law claims of intentional and negligent infliction of emotional distress, negligent supervision, and defamation.

On the same day that Plaintiff filed this complaint, he filed a preliminary injunction requesting emergency relief. The late District Court Judge Harold M. Fong determined that abstention pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), was appropriate, and denied the Motion for Preliminary Injunction staying the federal proceedings pending the outcome of the state administrative action.

The Ninth Circuit reversed Judge Fong's Order, vacated the stay, and instructed the district court to enter a preliminary injunction. In its memorandum opinion, the Ninth Circuit found that Defendants were prosecuting Plaintiff in bad faith, and that abstention under *Younger* was therefore inappropriate. Pursuant to the Ninth Circuit's opinion, this court granted Plaintiff's Motion for Preliminary Injunction.

On October 30, 1997, Defendants filed the instant Motion to Dismiss or for Summary Judgment alleging Plaintiff failed to state a federal claim, and various defenses to Plaintiff's claims. While Defendants focus on whether they are entitled to immunity, Defendants also claim that Plaintiff failed to state a federal cause of action. Plaintiff filed his Opposition on December 18, 1997, and Defendants replied on December 23, 1997.

## STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). For the purposes of a 12(b)(6) motion, "[r]eview is limited to the contents of the complaint." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 755 (9th Cir.1994).

A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992) (quoting *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989)) (further citations omitted). All allegations of material fact are taken as true and construed in the light most favor-

able to the plaintiff. *Id.* Civil rights complaints are to be liberally construed. *Id.* (citing *Gobel v. Maricopa County,* 867 F.2d 1201, 1203 (9th Cir.1989)).

To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. Monterey,* 920 F.2d 1496, 1507 (9th Cir.1990).

## DISCUSSION

### I. *Rule 56(f) Continuance.*

Plaintiff requested a continuance under Federal Rule of Civil Procedure 56(f). Plaintiff contends that he was unable to depose Defendants Seki and Nakamura re-, garding their roles in the Flowers investigation, or the scope of their duties at RICO. Plaintiff's Opp. at 40. Based upon the following discussion, the court finds that additional discovery will not cure the deficiencies present in Plaintiff's federal claim or assist Plaintiff in defending against this motion.

### II. *42 U.S.C. § 1983.*

Plaintiff alleges a cause of action under 42 U.S.C. § 1983, against each of the Defendants. The court will consider this cause of action first as it forms the basis for federal jurisdiction.[1] Plaintiff contends that he is entitled to damages from Defendants Seki, Nakamura, Tamamoto, and Harada under § 1983 "for instituting and/or maintaining an ongoing bad faith prosecution and investigation in violation of Dr. Flowers, constitutional rights under the privileges and immunities clause of the United States Constitution and the Fifth and Fourteenth Amendments to the United States Constitution." First Amended Complaint at ¶ 201. Plaintiff also alleges that Defendants Nakamura, Nakano, Ta-

mamoto, and Harada conspired to violate his constitutional rights. *Id.* at ¶ 204. Plaintiff asserts that Defendants Nakamura and Matayoshi, were deliberately indifferent, and knew or should have known, that "Defendants Seki, Nakano, Tamamoto, and Harada were engaged and continue to engage in a bad faith prosecution and investigation of Dr. Flowers," and failed to properly supervise Defendants Seki, Nakano, Tamamoto, and Harada, thus adopting or ratifying their actions. First Amended Complaint at ¶ 207. Section 1983 is the basis for each of Plaintiff's federal claims. Hence, to remain in federal court, Plaintiff must properly allege a violation of 42 U.S.C. § 1983 upon which relief can be granted.

■  To assert a claim under 42 U.S.C. § 1983, Plaintiff must allege that he was deprived of a specific constitutional right by Defendants, who are unquestionably state actors. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). In determining jurisdiction, this court previously characterized Plaintiff's constitutional right in this case as a substantive due process right, and stated that "Plaintiff's relief depends upon establishing the applicability and validity of his claims under the Fourteenth Amendment." January 30, 1997 Order Adopting Magistrate's Findings and Recommendations that Plaintiff's Motion to have the Appellate Court's Finding of Bad Faith to be Law of the Case be Granted in Part and Denied in Part at 4–5. At this time the court is compelled to review Plaintiff's federal claim again to determine if it can survive a motion to dismiss. Thus, it being clear that Defendants are state actors, the court will focus its discussion on whether Plaintiff has alleged a deprivation of a specific constitutional right.

---

1. The court notes that the majority of the moving and opposing papers focus on immunity, however, the court finds that the more significant issue is whether Plaintiff has in fact stated a federal claim. The court ad-

dressed such a query to both parties at oral argument, and indicated its concern at that time that a federal claim may not be alleged on these facts. The court again concentrates on this inquiry in this Order.

## A. *Substantive Due Process.*

At the outset it must be noted that it is difficult to determine what Plaintiff asserts as the basis for his substantive due process right, and thus his § 1983 claim. It appears Plaintiff is asserting a federal constitutional right to be free from bad faith prosecution. Plaintiff makes a conclusory allegation that he "need not show independent harm from this license revocation proceeding because he has a constitutional right to be free from bad faith investigation and prosecution." Plaintiff's Opp. at 32. In a footnote Plaintiff insists that "Judge Harold Fong made this ruling in his May 13, 1994, [sic] order denying Dr. Flowers' motion for preliminary injunction ... ("[i]f plaintiff successfully establishes that the presecution [sic] itself is proceeding in bad faith, then the due process safeguards of the prosecution are of no avail[.]")." *Id.*

Plaintiff analogizes his cause of action to that in *Mishler v. Nevada State Board of Medical Examiners,* 896 F.2d 408 (9th Cir. 1990). In *Mishler* the Ninth Circuit held that the plaintiff stated a cause of action under 42 U.S.C. § 1983 for deprivation of his property without due process. *Mishler,* 896 F.2d 408, 409 (1990). The Ninth Circuit there found that "an essential element of a professional license, part of the property comprising the license, is the right to have one's good standing in the profession certified by the agency that has issued the license." *Id.* at 410. Plaintiff compares his constitutional claims to those of the plaintiff in *Mishler,* stating that Plaintiff has "a cloud over his license [as a result of the license revocation proceedings] that has reduced his practice and denied him hospital privileges." Plaintiff's Opp. at 33. However, more importantly, Plaintiff distinguishes his claim from that of the plaintiff in *Mishler* by stating:

> In *Mishler* the physician claimed only a denial of due process, which requires deprivation of a protected interest for an action under Section 1983.... In contrast, Dr. Flowers has charged Defendants with bad faith, and filing a Petition "without a reasonable expectation of obtaining a valid conviction."

Plaintiff's Opp. at 34. Thus, Plaintiff is not asserting a deprivation of property, and is instead claiming that he has a constitutional right to be free from bad faith prosecution. Defendants contest the existence of such a right, and Plaintiff has failed to point to any case which establishes its existence as a substantive due process right in the Ninth Circuit. On a motion to dismiss, the court must consider whether such a right exists, and whether Plaintiff has stated a claim upon which relief can be granted for deprivation of that right.

Substantive due process refers to certain actions that the government may not engage in, no matter how much process is afforded. *Blaylock v. Schwinden,* 862 F.2d 1352, 1354 (9th Cir.1988). The United States Supreme Court has found "certain rights associated with the family have been accorded shelter under the Fourteenth Amendment's Due Process Clause." *Moore v. City of East Cleveland,* 431 U.S. 494, 502–03, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Some of the rights given protection as substantive due process include freedom of choice with respect to child bearing, parental rights, rights as to child rearing and living arrangements. *See Id.; Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Limits on substantive due process come from "respect for the teachings of history [and], solid recognition of the basic values that underlie our society." *Griswold v. Connecticut,* 381 U.S. 479, 501, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Harlan, J. concurring.). While the standards established to identify a substantive due process right are somewhat unclear, it is well settled that official conduct that "offend[s] those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most hei-

nous offenses[,]" amounts to a substantive due process violation. *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1446 (9th Cir. 1986) (quoting *Rochin v. California*, 342 U.S. 165, 169, 72 S.Ct. 205, 96 L.Ed. 183 (1952)).

■ Essentially, Plaintiff alleges that the right to be free from bad faith prosecution is a right guaranteed by substantive due process, and a right actionable through § 1983. The court disagrees. The Supreme Court indicated that the "[s]ubstantive due process clause has at times been a treacherous field." *Moore*, 431 U.S. at 502, 97 S.Ct. 1932. The Court has recognized that rights guaranteed by the substantive due process clause represent "a realm of personal liberty which the government may not enter." *Armendariz v. Penman*, 75 F.3d 1311, 1319 (9th Cir. 1996) (internal quotations and citations omitted). "There are risks when the judicial branch gives enhanced protection to certain substantive liberties without the guidance of the more specific provisions of the Bill of Rights." *Id.* In *Blaylock*, the Ninth Circuit declined to provide protection under the substantive due process clause to the plaintiffs' claim for failure to properly administer the Montana Workers' Compensation Act. 862 F.2d 1352, 1354 (9th Cir.1988). The Ninth Circuit there found that the plaintiffs had not alleged a substantive due process right. *Id.* Plaintiff here has also failed to allege a right protected by the substantive due process clause. The right to be free from bad faith or malicious prosecution, while important, can be protected through other available procedural safeguards. It is not generally the type of right which has historically been offered protection through the substantive due process clause.

In *Johnson v. Barker*, 799 F.2d 1396, 1398 (9th Cir.1986), the plaintiffs were given criminal citations as they hiked down Mt. St. Helens during its eruption in 1984. The plaintiffs were alleged to have been in a restricted zone on the mountain. *Id.* The Sheriff that issued the citation was in a helicopter, and refused to give the plaintiffs a ride down the mountain. *Id.* As a result of this the plaintiffs were forced to spend another night on the mountain, and the volcano erupted during that night. *Id.* A helicopter had to come up the mountain to get them the next day, as they were unable to get down of their own accord. *Id.* Counsel for the plaintiffs notified the Skamania County Deputy Prosecutor that the plaintiffs were never within the restricted zone on the mountain. *Id.* The Sheriff's office still pushed for prosecution and after months of delay, the charges were dismissed. The plaintiffs were then charged with attempting to violate the executive order which restricted certain parts of the mountain. *Id.* No trial was held on these charges as a Writ of Prohibition was entered by the Washington Superior Court on the ground that the plaintiffs were not granted the right to a speedy trial. *Id.*

The plaintiffs later filed a civil rights action, alleging malicious prosecution of constitutional proportions on several basis. *Id.* at 1399–1400. The plaintiffs asserted:

First, that the prosecutors hesitated to drop the initial charges, even after they were discovered to be baseless, because the sheriff wanted to prosecute appellants for "political" reasons. Second, that the prosecutors tried to make a case against appellants by arguing that they had entered a broader restricted zone, when in fact that zone had not been sufficiently publicized. Third, that after finally dismissing the first charges, the prosecutors filed a new complaint against appellants charging them with "attempting" to enter the known restricted areas. Fourth, that prosecutor Hansen misrepresented to appellants' counsel that the Army helicopter pilot would testify at trial, when in fact Hansen knew the witness would be unavailable. Finally, that the prosecutors sought and received a continuance based on that unavailability and subsequently

failed to bring appellants to trial before the Writ of Prohibition was granted.

*Id.* at 1400. The Ninth Circuit found that even given these facts, the conduct by the government officials was not "so egregious as to 'shock the conscience.'" *Id.* (quoting *Rochin v. California,* 342 U.S. 165, 169, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). Thus, the court there held that the actions taken by the government officials did not violate substantive due process. *Id.*

The action taken by the government officials in *Johnson* is similar to the activity that Plaintiff alleges to have occurred here. Plaintiff asserts that Defendants continued to investigate and prosecute the proceedings against him even though they were aware that the allegations had no merit. While the court agrees that some of Defendants' activities are questionable, as in *Johnson,* they are not so egregious as to shock the conscience, and do not rise to the level of a substantive due process violation.

Given the history of substantive due process, and the Supreme Court's reluctance to extend protection through the substantive due process clause, while the court is concerned about the actions allegedly taken against Plaintiff, the court finds that Plaintiff cannot receive protection through the substantive due process clause.[2]

### B. *Procedural Due Process.*

As discussed earlier, Plaintiff has gone to great lengths to explain that he has not asserted a violation of his procedural due process rights as a basis for his § 1983 claim, and has instead asserted "the constitutional right to be free from bad faith

prosecution." Plaintiff's Opp. at 31. In response to Defendants' assertions that Plaintiff has failed to demonstrate deprivation of a protected interest, Plaintiff explains that he

has provided uncontested evidence that he was—and is being—harmed by Defendants' bad faith investigation and prosecution. Second, regardless, Dr. Flowers need not show independent harm from this license revocation proceeding because he has a constitutional right to be free from bad faith investigation and prosecution.

Plaintiff's Opp. at 32. Nonetheless, Plaintiff alleges that he was unable to accept an offer for full professorship from a University in Kentucky, that the offer has since been withdrawn, and that he was therefore harmed by Defendants' actions. *Id.* As mentioned earlier, Plaintiff also discusses the existence of a "cloud over his license that has reduced his practice and denied him hospital privileges." *Id.* at 33. However, Plaintiff never specifically avers that as a result of the state administrative proceedings and the bad faith prosecution, he was denied his property without procedural due process. Thus, every indication from Plaintiff in his Amended Complaint and his opposition in this proceeding, is that he is not alleging a procedural due process violation.[3]

However, the court notes that Plaintiff does not make his allegations entirely clear. Plaintiff contradicts himself in some sense as he explains the relationship of the facts in *Mishler* to his case. He initially asserts that "Dr. Flowers claims just such

**2.** Furthermore, the United States Supreme Court in *Albright v. Oliver,* 510 U.S. 266, 270–71 n. 4, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), held that "substantive due process may not furnish the constitutional peg on which to hang" a tort for malicious prosecution. *See Perez–Ruiz v. Crespo–Guillen,* 25 F.3d 40, 42 (1st Cir.1994) (finding that the Supreme Court in *Albright* "virtually . . . foreclose[d] reliance on substantive due process as the basis for a viable malicious prosecution claim under section 1983").

**3.** The court recognizes that in pro se cases the court is required to consider a plaintiff's complaint liberally, and often times aid the plaintiff in the proper assertion of his rights. However, where, as here, a plaintiff is represented by competent counsel and has chosen to pursue a particular avenue for his claim, federal courts cannot and should not recharacterize the plaintiff's claim, thus becoming a second advocate for the plaintiff.

a deprivation[,]" as the plaintiff in *Mishler*, then he later contrasts his claims with that of the plaintiff in *Mishler* and states: "In contrast [to the deprivation alleged in *Mishler*], Dr. Flowers has charged Defendants with bad faith." Plaintiff's Opp. at 33–34. As a result of Plaintiff's inconsistency, the court must consider whether Plaintiff has in fact alleged facts to support a similar deprivation as the plaintiff in *Mishler*.

■ In *Mishler*, the Ninth Circuit held that because the State of Nevada delayed, for over seventeen months, certifying to the Ohio Medical Board that the plaintiff held a valid license to practice medicine in the State of Nevada, the plaintiff could properly allege a claim for malicious taking of his property by the Nevada Medical Board. *Mishler*, 896 F.2d at 410–11. The property that the plaintiff was deprived of in *Mishler* was the "right to have one's good standing in the profession certified by the agency that has issued the license." *Id.* at 410. Plaintiff asserts that in his case RICO's pending investigation against him barred him from obtaining a Kentucky medical license, and thus employment in Kentucky. Plaintiff's Opp. at 33. Yet, Plaintiff does not allege that the Kentucky Medical Board ever contacted the State of Hawaii to obtain certification. In fact, Plaintiff states that *he* wrote the State of Hawaii alerting RICO about his offer of employment in Kentucky, and explaining to RICO that the pending investigation would bar him from obtaining a Kentucky license. *Id.* In essence, Plaintiff wanted the pending investigation dismissed, not a certification of his good standing. His claim is, therefore, not the same as the Plaintiff in *Mishler*, as the State of Hawaii licensing agency did not deprive him of his property interest in having his good standing to practice medicine certified by the State licensing agency. If the State of Hawaii had refused to certify Plaintiff's

good standing to the Kentucky Medical Board, then Plaintiff would be able to make the same claim as the plaintiff in *Mishler*. On these facts, as pled by Plaintiff, Plaintiff has not alleged a protected property interest which was deprived without due process of law. RICO's decision not to dismiss the civil proceeding pending against Plaintiff in response to his letter, does not amount to a deprivation of a constitutionally protected property interest in the Ninth Circuit.

■ Furthermore, malicious prosecution itself does not constitute a due process violation unless the plaintiff demonstrates that the malicious prosecution was done for the purpose of denying the plaintiff equal protection of the laws, or depriving the plaintiff of another constitutional right. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.1995). The Ninth Circuit, when discussing malicious prosecution, is referring to prosecution in the criminal context. While Plaintiff's claim here is a claim for malicious or wrongful prosecution in the civil or administrative context, it is nonetheless akin to a claim for malicious criminal prosecution, and thus, the court looks to the cases regarding malicious prosecution for guidance.[4]

For example, in *Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir.1981), the Ninth Circuit explained that while the general rule is that malicious prosecution "does not constitute a deprivation of life, liberty or property without due process of law ... [i]n this case an interest in liberty was impaired under circumstances in which appellant's allegations strongly suggest that a post-deprivation hearing under state law would not afford him constitutionally required due process." In *Cline*, the plaintiff filed a complaint pursuant to 42 U.S.C. § 1983, alleging that the defendants conspired to have the plaintiff convicted of "groundless charges," and deny him his right to fair trials by bribing witnesses,

4. As pointed out by Defendants, the Restatement of Torts 2d, discusses the civil counterpart to malicious prosecution, that being wrongful institution of civil proceedings. Defendants' Motion at 15–16.

and presenting false evidence and perjured testimony to the juries. *Cline*, 661 F.2d at 110. The plaintiff was eventually convicted with the use of the false evidence and perjured testimony, and was sent to prison. The court found that he was deprived of his liberty without due process, and thus that the malicious prosecution was conducted with the intent to deny the plaintiff his constitutional right to liberty. *Id.* at 112. The plaintiff's claim for malicious prosecution fell within the noted exception, and therefore could serve as the basis for his claim under 42 U.S.C. § 1983. *Id.* at 112. Plaintiff's case here is distinguishable from the circumstances in *Cline.* The plaintiff in *Cline* asserted a deprivation of a specific constitutional right, whereas Plaintiff in this case has failed to do so.

■ Since, as discussed above, Plaintiff has not asserted a denial of a constitutional right, he "must bring his common law tort claim [malicious prosecution] . . . within the scope of section 1983, under the exception for a malicious prosecution intended to deprive someone of the equal protection of the laws." *Id.* at 561. As noted, in his Amended Complaint Plaintiff alleges a cause of action under 42 U.S.C. § 1983 "for instituting and/or maintaining an ongoing bad faith prosecution and investigation in violation of Dr. Flowers' constitutional rights under the privileges and immunities clause of the United States Constitution and the Fifth and Fourteenth Amendments to the United States Constitution." Amended Complaint at ¶ 201. Plaintiff does not specifically allege that the administrative proceedings were wrongfully instituted with the intent to deprive him of his right to equal protection of the laws. However, because Plaintiff alleged a violation of the Fourteenth Amendment, which encompasses the Equal Protection Clause, the court will assume that Plaintiff is making this legal argument.

In order to properly assert an equal protection violation, Plaintiff must show that similarly-situated classes received different treatment. *Christian Gospel Church v. City and County of San Francisco*, 896 F.2d 1221, 1225 (9th Cir.1990). Therefore, "[a]n equal protection argument requires the existence of at least two classifications of persons which are treated differently under the law." *Id.,* (quoting *United States v. Horton*, 601 F.2d 319, 323–4 (7th Cir.1979)). Merely treating two groups differently does not necessarily violate the Equal Protection Clause. *Bonner v. Lewis*, 857 F.2d 559, 565 (9th Cir.1988). The record before the court is devoid of factual allegations that suggest that the civil proceeding was instituted against Plaintiff in an attempt to deprive him, based upon his membership in a certain class, equal protection of the laws. Thus, Plaintiff failed to bring his common law tort claim for bad faith prosecution into the scope of a claim under 42 U.S.C. § 1983, by alleging that the bad faith proceedings were instituted against him in an attempt to deprive him of equal protection of the laws.

Even construing Plaintiff's Amended Complaint in the light most favorable to him, Plaintiff has not stated a federal cause of action under 42 U.S.C. § 1983. Upon careful review of the Amended Complaint and Plaintiff's Opposition to this motion, the court is unable to point to any facts or allegations that satisfy the pleading requirements for a cause of action for bad faith prosecution of an administrative proceeding. As noted, Plaintiff has failed to allege that the civil administrative proceedings were instituted as an attempt to deny him equal protection of the laws, or any other constitutional right, such as his life, liberty or property. While Plaintiff indicates that his professional reputation has been injured as a result of the pending proceedings, the Supreme Court has indicated that "injury to reputation by itself [is] . . . not a 'liberty' interested protected under the Fourteenth Amendment." *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct.

1789, 114 L.Ed.2d 277 (1991).[5] Thus, given the above discussion, Plaintiff has not stated a claim for a procedural due process violation based upon bad faith institution of civil proceedings. The court recognizes, that Plaintiff is not restrained from bringing a state law claim for wrongful institution of civil proceedings in state court. Thus, process is available at the state level in order to protect Plaintiff's interests.

### C. Constitutional Tort of Malicious Prosecution.

■ The United State Supreme Court recognized, in *Albright v. Oliver*, 510 U.S. 266, 271 n. 4, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the existence of a diversity of opinion regarding whether a claim for malicious prosecution is independently actionable under § 1983. In *Albright*, the Court indicated that substantive due process would not afford the plaintiff relief for malicious prosecution, and the Court instead looked to the most analogous constitutional amendment, which in that case was the Fourth Amendment. *Id.* at 274, 114 S.Ct. 807. As discussed in *Albright*, some circuits allow a cause of action under 42 U.S.C. § 1983, for malicious prosecution, essentially making such a claim a constitutional tort. *See Lee v. Mihalich*, 847 F.2d 66, 70 (3d Cir.1988) (holding the elements for constitutional tort of malicious prosecution under § 1983 are the same as for the common law tort); *Wheeler v. Cosden Oil and Chemical Co.*, 734 F.2d 254, 258 (5th Cir.1984) ("there is a federal right to be free from bad faith prosecutions.").

The Ninth Circuit, however, has not recognized malicious prosecution as a constitutional tort. In fact, the Ninth Circuit has clearly held, "the general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir.1985) (en banc)); *see also Karim–Panahi v. Los Angeles Police Department*, 839 F.2d 621, 624 (9th Cir.1988). The Ninth Circuit however has recognized an exception to the general rule if a malicious prosecution is "conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." *Id.* at 562 (internal quotations and citations omitted). Essentially, this is the same exception discussed above in the portion of this Order regarding procedural due process. Significantly, Plaintiff has failed to allege the requisite constitutional deprivations, either of equal protection, or a separate constitutional right, and thus has not stated a federal claim for bad faith prosecution to serve as the basis for a claim under 42 U.S.C. § 1983.

The court has reviewed the Ninth Circuit's earlier decision in this matter several times. This is an unfortunate case. On appeal the State of Hawaii took a position which was uncalled for and out of line. In its decision, the Ninth Circuit aptly noted concern about the State's position and the possible improprieties of the state administrative proceedings. This court is also wary of the tactics taken in the investigation against Plaintiff. However, when the court takes a careful, reasoned view of the allegations and assertions in this case, it simply cannot find that Plaintiff has stated a federal claim.[6] Plaintiff's allegations, as pled in his Complaint and explained in his Opposition, do not constitute a claim for

---

5. The United States Supreme Court, in *Paul v. Davis*, 424 U.S. 693, 708–09, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), rejected the plaintiff's contention that the actions of state officials stigmatized his reputation and impaired his future employment opportunities, thus depriving him of a constitutionally protected liberty interest.

6. This court is aware that the Ninth Circuit Panel was understandably incensed by the nature and tone of the arguments made by the then Deputy Attorney General handling this case. But this court, and any subsequent Ninth Circuit Panel must step back from that unfortunate episode, and review the facts and law of this case dispassionately.

malicious prosecution that would rise over and above the general state law tort, to a constitutional deprivation.

### D. *Privileges and Immunities.*

■ Plaintiff indicates that Defendants' actions violated the Privileges and Immunities clause of the Constitution. See Complaint at ¶ 201. Nevertheless, based upon the facts presented to the court, Plaintiff cannot rely on the Privileges and Immunities clause of the Constitution as a predicate to his § 1983 cause of action. Discrimination on the basis of out-of-state residency is a necessary element for a claim under the Privileges and Immunities Clause. *Giannini v. Real,* 911 F.2d 354, 357 (9th Cir.1990). Plaintiff fails to assert that he was discriminated against or treated differently because of the status of his residency. The court is at a loss to understand, and Plaintiff has failed to demonstrate, the relationship that the Privileges and Immunities Clause has to his § 1983 claim.

### III. *Younger Abstention and Bad Faith.*

■ In his opposition, to support his allegations that there is a federal constitutional right to be free from bad faith prosecution, Plaintiff relies on *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. The Supreme Court, in *Younger,* articulated a doctrine of abstention, establishing that a federal court should decline to enjoin state proceedings out of concerns for comity and federalism. *Younger* abstention embodies "a strong federal policy against federal-court interference with pending state judicial proceedings, absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Association,* 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

In determining whether to abstain under *Younger,* the Ninth Circuit applies the three-pronged test outlined by the United States Supreme Court in *Middlesex:* abstention is appropriate where (1) the state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise federal questions. *Fresh International Corp. v. Agricultural Labor Relations Board,* 805 F.2d 1353 (9th Cir.1986) (*citing Middlesex,* 457 U.S. at 432, 102 S.Ct. 2515).

■ There is, however, a recognized exception to *Younger* abstention for state proceedings brought in bad faith or for purposes of harassment. *Younger,* 401 U.S. at 49, 91 S.Ct. 746. Bad faith has been defined in this context as any "prosecution [that] has been brought without a reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant,* 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975) If the state official prosecutes with knowledge that there is no lawful basis for the prosecution, then the prosecution is in bad faith. *See Nobby Lobby, Inc. v. City of Dallas,* 970 F.2d 82, 88 (5th Cir.1992) (full awareness that prosecution was invalid on the basis of judicial decision satisfied bad faith requirement). It is this exception to *Younger* that Plaintiff appears to rely on as a basis for his federal right to be free from bad faith prosecution.

Upon further review of Plaintiff's opposition, the court notes that Plaintiff alleges that the type of bad faith discussed in *Younger* is sufficient to allege a federal cause of action. While *Younger,* and the cases following it, discuss bad faith, they do not create a cause of action for bad faith. Instead, they discuss whether the case before the court falls into the bad faith exception under *Younger,* and whether, based upon this, the federal court should decline to abstain, and instead allow the federal case to proceed, and stay the state proceedings. Here, the Ninth Circuit clearly found that the state court proceeding fell within the bad faith exception to *Younger* abstention, however, neither the Ninth Circuit, nor this court has held that Plaintiff properly alleged a cause of action under § 1983 for violation of Plaintiff's constitutional right to be free from

bad faith prosecution. As it stands today, without more, such a constitutional tort does not exist in the Ninth Circuit.

### IV. *This Court's January 30, 1997 Order.*

Plaintiff continually refers to this court's January 30, 1997 Order Adopting Magistrate's Findings and Recommendation that Plaintiff's Motion to have the Appellate Court's Finding of Bad Faith Determined to be Law of the Case be Granted in Part and Denied in Part. In that Order, this court discussed whether it had subject matter jurisdiction over Plaintiff's complaint. The court explained that Defendants objected to the Magistrate's Findings and Recommendations because "Defendants claim that this court does not have subject matter jurisdiction over this case if the court finds that Defendants are entitled to immunity." January 30, 1997 Order at 4. The court further addressed Defendants' claim that Plaintiff failed to identify the deprivation of a specific constitutional right. *Id.* Significantly, the court, at that time, was not reviewing the Amended Complaint on a motion to dismiss, and was merely determining whether to adopt the Magistrate's Findings and Recommendations regarding jurisdiction. Now, the court has a proper motion to dismiss before it, and is given the opportunity to completely review the entire Amended Complaint to determine if a claim under 42 U.S.C. § 1983 is properly stated. After careful review and reflection, the court holds that Plaintiff has not demonstrated and properly supported his allegations under 42 U.S.C. § 1983, and based upon the facts before the court, Plaintiff cannot do so. Accordingly, the court is compelled to dismiss Plaintiff's claim brought under 42 U.S.C. § 1983 for failure to state a cause of action.[7]

### V. *State Law Claims.*

As the court has dismissed Plaintiff's only federal causes of action, the remaining claims are solely based upon state law. The court exercised supplemental jurisdiction over the state law claims. Given that federal jurisdiction is now lacking, the court, in its discretion, DISMISSES Plaintiff's remaining state law claims WITHOUT PREJUDICE.

### VI. *Immunity for Claims Brought Under 42 U.S.C. § 1983.*

The court notes that even if Plaintiff had properly stated a federal claim under 42 U.S.C. § 1983, Defendants are protected by either absolute or qualified immunity at least as to the claims for damages alleged against them in their individual capacities.

▇▇ Defendants each claim either absolute or qualified immunity for their actions which allegedly resulted in deprivation of Plaintiff's constitutional rights. While immunity applies to those claims for monetary damages asserted against Defendants in their individual capacities, immunity does not protect Defendants from claims made against them for injunctive relief in their official capacities.

#### A. *Absolute Immunity.*

Defendants Seki and Nakamura assert that they are entitled to absolute prosecutorial immunity regarding the preparation and filing of the Petition. Defendants Seki, Nakamura, Tamamoto, and Nakano also insist that they are entitled to absolute prosecutorial immunity regarding their work after the filing of the Petition in preparation for the presentation of the case at a contested hearing before the Office of Administrative Hearings.

For actions brought under 42 U.S.C. § 1983, the United States Supreme Court

---

7. Plaintiff also claims that Defendants conspired to violate his constitutional rights, and that Defendant supervisors were deliberately indifferent to the activity taken against Plaintiff that allegedly deprived him of his constitutional rights. Since the court has found that Plaintiff did not properly allege a constitutional deprivation, Plaintiff has also failed to state a claim under these causes of action.

has been hesitant to recognize absolute immunity for state actors. Although the language of § 1983 purports to offer no immunities,[8] the courts have found that § 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Thus, the United States Supreme Court in *Imbler*, found "the threat of s 1983 suits would undermine performance of [a prosecutor's] ... duties," and recognized the need for absolute immunity for prosecutors in suits brought under 42 U.S.C. § 1983. *Id.* at 424, 96 S.Ct. 984.

■ However, the Court has made clear that not every action taken by a prosecutor is entitled to absolute immunity. Absolute prosecutorial immunity is not conferred on individuals based merely on their status as prosecutors. To determine if absolute immunity applies, the court has to look at "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. .219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). The official seeking the protection of absolute immunity "bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). The United States Supreme Court has made clear that the common law rationale behind absolute prosecutorial immunity offers protection only for those activities that are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430, 96 S.Ct. 984; *see also Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (Finding a prosecutor's conduct in connection with the preparation and filing of charging document is protected by absolute immunity, however, her

actions in executing certification for determination of probable cause were too far removed from her role as an advocate in judicial proceedings and were not entitled to absolute immunity.)

■ The Supreme Court explained in *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993),

There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer it is "neither appropriate nor justified that, for the same act, immunity should protect the one and not the other." ... Thus, if a prosecutor plans and executes a raid on suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction."

(citations omitted). Therefore, a prosecutor's actions as an advocate will be protected by absolute immunity, while actions that are not closely associated with judicial proceedings are guaranteed only qualified immunity. When a prosecutor herself conducts an investigation to determine if a suspect can be arrested, absolute immunity may not protect this activity. Buckley, 509 U.S. at 275, 113 S.Ct. 2606. It is clear that even if, at a later date, any evidence turned up by the prosecutor is used before a grand jury for example, the investigatory work is not "retroactively transformed[ed] ... from the administrative into the prosecutorial." *Id.* at 276, 113 S.Ct. 2606. It is now clear that "[a] prosecutor may not

---

8. 42 U.S.C. § 1983 sets forth a civil cause of action for deprivation of constitutional rights. The statute provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of

the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress." 42 U.S.C. § 1983 (West 1994).

shield his investigative work with the aegis of absolute immunity merely because ... that work may be retrospectively described as 'preparation' for a possible trial." *Id.* Admittedly, the line is not clearly delineated, however, the individual claiming absolute prosecutorial immunity must demonstrate the activity performed was not administrative or investigative in nature, and was instead closely associated with the judicial proceedings and his role as an advocate.[9]

Finally, in *Butz v. Economou,* 438 U.S. 478, 515, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court held that agency officials "performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." The Court reasoned that agency officials acting in such a capacity are often vested with similar discretion as prosecutors in determining whether to proceed with an administrative case. *Id.* at 516, 98 S.Ct. 2894; *see also Demery v. Kupperman,* 735 F.2d 1139 (9th Cir.1984) (holding that a deputy attorney general should be granted absolute immunity with regard to administrative disciplinary proceeding against a doctor).

To bolster their argument for absolute immunity, Defendants urge that "[n]o competent attorney would consider proceeding with a case without personally evaluating the documentary evidence and potential testimony of witnesses ... both as part of preparing a civil or criminal complaint, and as part of preparing for hearings or discovery subsequent to initiation of proceedings." Defendants' Motion at 9–10. Defendants explain that each of the attorneys—Seki, Nakamura, Nakano, and Tamamoto—"were intimately involved in the evaluation and preparation of the administrative petition (Seki and Nakamura) or in the post-petition development of the administrative case for presentation at a contested hearing (Seki, succeeded by Tamamoto, assisted early in

1996 for a few months by Nakano, and supervised by Nakamura)." *Id.* at 10. Plaintiff disagrees with this blanket characterization of Defendants' work.

The difficulty here is that Plaintiff is not complaining about particular actions taken by Defendants. Rather he is complaining about the entire process, from the investigation to the filing of the Petition, and the other actions taken to date.

■ At the outset, the court finds that it is clear that any work performed by Defendants Seki, Tamamoto, Nakamura, and Nakano in the actual preparation and filing of the initial Petition on December 17, 1993, and the Amended Petition in 1994, is protected by absolute immunity. The actions taken to prepare and file the Petition are closely associated with judicial proceedings, and are the functional equivalent of a prosecutor filing criminal charges against a defendant. Likewise, the activity performed by Defendants in the preparation of the case for a hearing on the merits is also protected by absolute prosecutorial immunity.

The court recognizes, however, that there are actions taken by Defendants Seki, Nakamura, Tamamoto, and Nakano that are not so easily defined as activities that would be protected by absolute immunity. The line between investigatory/administrative work, and the work done in preparation for a prosecutor's case is not as black and white as most would like. Because of this, instead of deciding the difficult question of absolute immunity for the remainder of the activities, the court will assume, as Plaintiff argues, that the activities do not fit squarely within the realm of absolute immunity and instead analyze them under the doctrine of qualified immunity.

### B. *Qualified Immunity.*

■ The doctrine of qualified immunity provides that "state and local offi-

---

9. The Hawaii Supreme Court has also followed this distinction. In *Reed v. City and County of Honolulu,* 76 Hawai'i 219, 873 P.2d 98 (1994), the Hawaii Supreme Court limited the application of absolute prosecutorial immunity in § 1983 actions to quasi-judicial acts taken by county prosecutors.

cials are entitled to qualified immunity if 'their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Manhattan Beach Police Officers Assoc., Inc. v. City of Manhattan,* 881 F.2d 816, 818 (9th Cir.1989) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). " 'The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.' " *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The doctrine protects state and local officials from their exercise of poor judgment, and only fails to protect those that are "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The Ninth Circuit has articulated a three-step analysis to determine whether an official is entitled to qualified immunity. The court must consider:

> (1) whether the plaintiff has identified a specific federal statutory or constitutional right that has been allegedly violated, (2) whether that right as so clearly established as to alert a reasonable official to its parameters and (3) whether a reasonable officer could have believed his or her conduct was lawful.

*Sweaney v. Ada County, Idaho,* 119 F.3d 1385, 1388 (9th Cir.1997). Initially, the plaintiff has the burden of proof to show that the right was clearly established. *Id.* Furthermore, the right must be " 'clearly established at the time of the challenged actions.' " *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The plaintiff " 'must show that the particular facts of his case support a claim of clearly established right.' " *Id.* at 1389 (quoting *Backlund v. Barnhart,* 778 F.2d 1386, 1389 (9th Cir. 1985)).

As explained above, Plaintiff has not asserted a specific constitutional or statutory right that is clearly established, and thus Plaintiff cannot overcome the first step in the analysis of qualified immunity. Thus, because Plaintiff has not demonstrated that the right alleged by him was clearly established in the Ninth Circuit at the time of the acts complained of, Defendants enjoy the protection of qualified immunity as to Plaintiff's claims under 42 U.S.C. § 1983.

Consequently, even if the court did not find that Plaintiff failed to state a federal claim, claims against Defendants in their individual capacity under 42 U.S.C. § 1983, and would be barred by either absolute or qualified immunity.

### CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motion to Dismiss Plaintiff's claims under 42 U.S.C. § 1983 for failure to state a claim, and DISMISSES Plaintiff's state law claims WITHOUT PREJUDICE.

IT IS SO ORDERED.